# Sheffield Coal & Iron Co. *v.* Alabama Fuel & Iron Co.

## Bill for Partition.

(Decided November 27, 1913.  64 South. 67.)

*Partition; Kind; Necessity of Sales.*—The facts examined and held to sustain a finding that the land sought to be partitioned could not be equitably partitioned in kind and that a sale thereof was necessary.

APPEAL from Franklin Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Alabama Fuel & Iron Company against the Sheffield Coal & Iron Company, for the sale of certain coal lands for partition among the joint owners thereof. From a decree declaring that the lands could not be equitably partitioned in kind, and ordering a sale thereof, respondents appeal. Affirmed.

JOSEPH H. NATHAN, for appellant. Counsel insists that the testimony does not justify the decree rendered,

[Sheffield Coal & Iron Co. v. Alabama Fuel & Iron Co.]

and in support thereof cites *Keaton v. Terry,* 93 Ala. 85; 30 Cyc. 174.

WILLIAM & JONES, for appellee. Counsel discuss the evidence and insist that there was no error in the decree rendered.

McCLELLAN, J.—The appellant is the owner of an undivided one-third interest in the 220 acres described in the bill; and the appellee is the owner of an undivided two-thirds interest in said lands. The appellee filed this bill, seeking a sale of the lands for division upon the ground that the lands could not be fairly and equitably partitioned in kind in proportions to which each is entitled. The chancellor awarded the relief sought and ordered the sale. The single matter argued here is the pure question of fact whether, as averred, the lands could not be fairly and equitably partitioned. Every element of the evidence on the issue has been carefully considered in the light and with the aid of discussions submitted by the respective solicitors. Our conclusion accords with that prevailing with the chancellor. It appears from the evidence that mineral underlies a part (small, according to definite indications found in the "test pits") of the lands; that this ore-bearing portion is of irregular shape; that it cuts across a quarter call, 160 acres of the land; that some of said tests indicate rich and some lean ore deposits; that the value of the land for its mineral deposits exceeds its value for agricultural purposes; that a problematic factor is present in the natural uncertainty attending the quantity and quality of the ore in the land, as well as the difference in the probable cost of extracting the ore from place where the overburden is great or small; and that the larger non-mineral acreage probably contributes to

the enhancement of the value of that portion in which tests disclose mineral deposits. Furthermore it is entirely reasonable to take account, in the premises, of the suggested factor which may be denominated, as respects prospective values of undeveloped mineral for the purposes of sale, speculative values. The notion is based upon indications brought to view by tests, and the further fact, of which this evidence speaks, that no one can certainly tell the quantity or value of such ore deposits. There is a large element of chance in such matters. Some prospective buyers might reasonably anticipate, from the indications disclosed, a more favorable, flattering result from actual mining than would others. It would seem that the interest of all joint owners of such a tract would more certainly secure the best value for their unseparated holdings by a sale, whereat the optimism and expert foresight of prospective buyers might invite an appreciation of the value of that which in part is, the evidence shows, of uncertain value. Now, to partition in kind would necessarily largely omit the best availment of the advantage mentioned, since it would be for commissioners to ascertain quantity, quality, and cost of mining and then apportion. The great uncertainty, to say nothing of other factors, of the success of such an effort to partition in kind is clearly inferable from the testimony of the witness Gass. He thought the ore tonnage could be ascertained to approximate correctness; but in this he is opposed by the weight of the evidence, if his use of the word "approximately" is accorded its ordinary signification. If the term was intended to import a less accurate meaning, his evidence would be valueless, since to partition in kind would require some definiteness in quantity and quality of the ore and, not the least important, the ascertainment of the probable cost of extracting it.

We do not think, on the evidence here, there can be any substantial doubt of the correctness of the chancellor's conclusion. The decree is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.