# JOHN W. VAN DYCK AND CHARLES H. BURR

## *vs.*

# VICTOR G. BLOEDE.

*Corporations: franchises of——; not real property. Equity: power of——; sale and partition of personalty.*

A corporation's franchise is property, but it does not involve any interest in land; it is not real estate; the fact that its use may require the occupancy or ownership of land does not make a franchise itself an interest in land.                    p. 335.

A corporation's franchise is incorporeal personal property held or owned in common, and upon the death of any of the owners his interests descend to personal representatives.   p. 335.

A court of equity has power to make sale of personal property for purposes of partition.                    p. 336.

The franchise given by the Mayor, etc., of Baltimore, by Ordinance No. 161, approved December 1st, 1904, to Richard B. Fentress and assigns, to use the streets, etc., for a term of years for the carriage of wires, etc., for manufacturing, selling and distributing electric light, is personal property, not susceptible of partition among the owners without loss and injury, and may be sold under a decree in equity for a division of the proceeds.                    pp. 335, 336.

A court of equity, upon proper averments and proof, will treat an absolute conveyance as a mortgage merely, and will permit the mortgagor to redeem.                    p. 334

But in the absence of such allegations and proof, equity will not interpose to investigate if the supposed vendor had any equitable cllaims to the property.                    p. 334

*Decided April 6th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Monroe Buckley* (with whom was *Joseph R. Gunther* on the brief), for the appellants.

*Robert Biggs,* for the appellee.

BURKE, J., delivered the opinion of the Court.

By ordinance No. 161, of the Mayor and City Council of Baltimore, approved December 1, 1904, Richard B. Fentress and Summerfield B. Medairy, their successors and assigns were granted permission and authority, to use, for a limited term of years, and upon certain conditions and terms stated in the ordinance, the streets, lanes and alleys of Baltimore City above the surface and the ground beneath the same "for the carriage of the wires and cables needed by them in the conduct of the business of manufacturing, selling, and furnishing electric light, heat and power in the city of Baltimore, and to connect any warehouses, dwellings, and other buildings along or upon the said streets, lanes and alleys with their wires or cables."

On October 31, 1910, Richard B. Fentress made to himself a demand note for thirty thousand dollars, wherein he pledged as collateral security all his interest in said franchise, and gave to the holder of the note "full power and authority to sell, assign and deliver the whole or any part of the said collateral * * * at public or private sale, * * * on the non-performance of any of the promises or agreements herein contained * * * without advertisement and without notice of the time and place of sale * * * and the

holder hereof may become the purchaser." This note was endorsed by Fentress to H. M. Kerr, and on October 21, 1911, after a payment of seventeen thousand five hundred dollars had been made on the note, it was assigned and transferred by H. M. Kerr to Victor G. Bloede. Bloede made a demand upon Fentress for payment of the balance due on the note, but he was unable to pay, and on October 25, 1911, wrote to the attorney of Mr. Bloede, and gave his assent to the sale of his interest in the franchise or ordinance; provided the amount of the purchase money should not be less than twelve thousand five hundred dollars net, and that said sum be credited on the note.

On October 31, 1911, Mr. Bloede assigned the note to Robert Biggs, Esq., attorney, who in the exercise of the power and authority contained in the note, sold the interest of Fentress in said franchise to Victor G. Bloede for the sum of twelve thousand five hundred dollars. It is shown by the evidence, and by an affidavit of Fentress filed in the case, that at the time of the transfer of the note and the sale to Bloede, Fentress was the owner of one undivided one-fourth interest in the franchise. By a deed of assignment dated October 31, 1911, Mr. Biggs granted and conveyed to Mr. Bloede, "all of the right, title and interest of the said Richard B. Fentress in and to an undivided one-fourth interest in the franchise in the City of Baltimore granted to Richard B. Fentress and Summerfield B. Medairy, being the franchise created and granted by Ordinance No. 161 of the Mayor and City Council, passed in the year nineteen hundred and four."

The bill in this case was filed November 28, 1914, by Victor G. Bloede against John W. Van Dyck, Charles H. Burr, Peter E. Tome and Richard B. Fentress. It recited the grant of the franchise to Medairy and Fentress, and alleged that the plaintiff was the owner of an undivided one-fourth interest thereof; that Fentress was the owner of one undivided one-fourth, which, however, he had assigned to Peter E. Tome as collateral security for loans made to him

by Tome. It is further charged that John W. Van Dyck was the owner of an undivided one-half interest in the franchise, but that Charles H. Burr had claimed to have an interest in the portion owned by Van Dyck, but the exact character and extent of his interest was unknown to the complainant. It alleged that the franchise was not susceptible of partition without material loss and injury to the parties entitled to an interest therein, and in order to make a division of the same it would be necessary to sell the franchise, and divide the proceeds among the parties according to their several interests. The bill prayed for the appointment of trustees with authority to sell the franchise, and for a distribution of the proceeds among the parties entitled according to their several interests. Answers were filed by all the defendants and replications filed and testimony was taken. The evidence shows that at the time of the institution of the suit Victor G. Bloede held the absolute legal title to one undivided one-fourth interest in the franchise and that Peter E. Tome was the owner of one undivided one-fourth interest and that the legal title to one-half undivided interest thereof was held by Charles H. Burr in trust for John W. Van Dyck, who was the equitable owner of that entire interest. All the parties who had any possible interest in the property were before the Court and were bound by the decree. The Court by its order of November 18, 1915, found "that Victor G. Bloede, the plaintiff in this case, is the absolute owner of an undivided one-fourth interest in the franchise referred to in the bill of complaint, and that the defendants, Peter E. Tome and John W. Van Dyck, are the owners of an undivided three-fourths interest in the said franchise; and it further appearing to the Court that the said franchise is not susceptible of partition in kind without material loss and injury to the parties interested therein, and that the plaintiff is entitled to have a decree for the sale of said franchise and for the distribution of the proceeds arising from said sale," and appointed trustees to make sale of the property. From

this decree Van Dyck and Burr have appealed, but no appeal was taken by Tome or Fentress.

The appellants contend that Bloede had no right to have a partition of the franchise: *First,* because he is merely a mortgagee of the interest of Fentress in the property, although he holds under the sale an assignment from Mr. Biggs the absolute legal title to that interest; *and secondly,* because the Court had no jurisdiction to decree a sale for purposes of partition of property of this nature. It is true that "a mortgagee of the undivided interest of one tenant in common has no right to file a bill for partition" under the provisions of the Code authorizing that to be done in certain cases. *Mitchell* v. *Farrish,* 69 Md. 235. It is also true that a Court of Equity upon proper averments and sufficient proof will treat an absolute conveyance as a mortgage, and will permit the mortgagor to redeem. But in this case Fentress does not deny Bloede's title. He instituted no proceedings to have the assignment declared to be a mere security, and he made no tender of any sum to Bloede, whose title has been established by the decree in this case, and from which Fentress has not appealed. Under these circumstances the appellants have no right to ask the Court to determine what equitable rights, if any, Fentress may have against Bloede. That would convert the proceeding into one of an entirely different nature. Mr. Bloede paid twelve thousand five hundred dollars for this one-fourth undivided interest, and at the time the purchase was made we think it beyond doubt that he intended to purchase and that he did in fact purchase the entire absolute interest. At that time he expected the Patapsco Electric and Manufacturing Company, of which he was the president, to take over the interest, and also expected it to acquire a controlling interest in the franchise. But that company declined to take over the interest or to assume any part of the payment thereof, and Bloede found himself with something which he could not use and which he was anxious to get rid of. He wanted Fentress to take it back or sell it, and his negotiations with Fen-

tress give rise to the equitable claim of Fentress which the appellants have urged upon us. What the negotiations were and what equitable rights Fentress had and which were acquired after the sale were fully explained by Mr. Bloede in his testimony, and it falls far short of proving that the assignment was intended by the parties to be a mere security for money advanced. Mr. Bloede testified, that, as the Patapsco Company had refused to take over the interest, he was willing at any time to transfer the interest to Fentress and to let him sell it, and keep any amount in excess of what he (Bloede) had paid. We are therefore, of opinion that there is no merit in the first objection. Nor do we think there is any difficulty as to the jurisdiction of the Court to decree a sale for the purpose of partition. The franchise which is the subject of the suit was granted to two individuals, their successors and assigns, for a limited period of years. It is valuable intangible property. It has, however, none of the attributes or characteristics of real property, or things real. It may be correctly characterized as incorporeal personal property held or owned in common, and upon the death of either of the common owners the title to his share would devolve upon his personal representatives. There is, it is true, a class of franchises which, because of the indeterminate and unlimited duration of the grants may be treated as incorporeal hereditaments and which would descend to the heirs at law of the owner. But the franchise before us is limited to a term of years and may be likened in its character to any other property or estate, whose termination is fixed and certain. We have no decision of this Court upon this precise question, but upon the well established tests for determining things real and things personal, we think there can be no doubt that *this particular franchise* is incorporeal personal property. In *Consolidated Gas Company* v. *Baltimore City,* 101 Md. 546, it was held that a franchise was property, but that it "does not involve an interest in land—it is not real estate but a privilege which may be owned without the acquisition of real property at all.

The *use* of a franchise *may* require the occupancy or even the ownership of land, but that circumstance does not make the franchise itself an interest *in* land," and it was further said, that "because *land may* be required in putting a franchise into effective operation, it does not follow that the franchise *is* land or an interest *in* land." This franchise is not susceptible of partition among its owners without loss, and injury, and, treating it as we do as personal property, there can be no doubt as to the jurisdiction of a Court of Equity to pass the decree appealed from.

See 3 *Pomeroy, Eq. Juris.*, secs. 1391-92, and cases there cited, recognizing the power of a court of equity to make sale of personal property for purposes of partition. *Crapster* v. *Griffith,* 2 Bland. 1. In *Hewitt's case,* 3 Bland. 184, it was said that there can be no doubt that a Court of Equity has power to make partition of any personal property among its several owners; "for indeed it has been said, that a partition of personal estate can only be enforced by a Court of Equity."

There is an inaccurate statement in the decree as to the interest of Messrs. Tome and Van Dyck. It is stated that they own "an undivided three-fourths interest in said franchise." The fact is, as above stated, Tome is the owner of one-fourth and Van Dyck is the owner of one-half. This inaccuracy can result in no injury, and the proceeds of sale will be distributed according to the several interests of these parties as we have ascertained them.

*Decree affirmed, the appellants to pay the costs in this Court.*