PIGEON RIVER LUMBER COMPANY v. ALEXANDER MILLER McDOUGALL AND OTHERS.
PIGEON RIVER LUMBER COMPANY v. POPLAR LAND COMPANY.[1]

November 5, 1926.

Nos. 25,489, 25,500.

**Partition of lands in kind rather than by sale preferred.**

1. Partition of lands in kind instead of by sale is preferred. And the burden is on the one demanding a sale to prove that partition in kind cannot be made without great prejudice to all the owners.

**Evidence does not justify finding that sale is for best interest of all the owners.**

2. The evidence does not justify the findings that the property involved is so situated that partition in kind cannot be had without great prejudice to the respective owners thereof, and that it is to the best interest of all the owners that it be sold.

Partition, 30 Cyc. p. 268 n. 9, 10; p. 269 n. 23.

See note in L. R. A. 1916D, 1158; 20 R. C. L. 1174; 4 R. C. L. Supp. 1377; 6 R. C. L. Supp. 1234.

Two actions in partition in the district court for Cook county. The cases were tried together before Magney, J., who ordered judgment in favor of plaintiffs for a sale of lands in partition. Defendants appealed from orders denying their motions for a new trial. Reversed.

*William P. Harrison* and *John G. Williams*, for appellants.
*Jenswold, Jenswold & Dahle*, for respondent.

HOLT, J.

Two actions in partition were tried together. The court found that partition in kind was to the prejudice of the owners, and that

[1] Reported in 210 N. W. 850.

the best interest of all required the lands to be sold. From the order refusing to modify the findings or grant a new trial the defendants appeal.

The lands involved are bounded on the north by Pigeon river, except as hereinafter noted. The one action concerns two fractional government lots less than 80 acres in area, namely, lots 1 and 3 in section 19, T. 64, R. 6, plaintiff being the owner of an undivided two-thirds, and defendants McDougall the one-third. Lot 1 borders the river for over half a mile, and at its easterly limits is what is known as the High Falls, a straight drop of 100 feet. Lot 3 adjoins on the east, is a 40 in width along the river and about a mile and a half from Pigeon Bay, Lake Superior, into which the river empties.

The other action involves 2,250 acres, an undivided three-fourths of which belongs to plaintiff and the balance to the defendant, Poplar Land Company. This tract abuts the river for a distance of over four miles from the north and south center line of section 24, T. 64, R. 7, westerly to the Indian Reservation; the south half of last named section is also a part of the 2,250 acres and adjoins the westerly line of lot 1, section 19. The north half of section 24 is owned solely by plaintiff, the river thereon taking a northeasterly course for over half a mile and then turning abruptly south crossing the easterly line of the section at the northwest corner of lot 1, section 19. In this last course the river for more than a mile and a half touches only land owned by plaintiff alone on the American side. Aside from the High Falls there are two or three places where dams could be placed between the Indian Reservation on the west and lot 3 in section 19 on the east, provided dam sites and flowage rights were also had along the north or Canadian side of the river.

The evidence shows that, although there are several available places for dam sites in the course of the river from the Indian Reservation east, the improvement for the development and distribution of light and power should be undertaken as one single enterprise or unit in order to succeed, and therefore the claim is made that all the land involved in each unit must be sold to bring the best price, and hence the finding is sustained "that partition cannot be had without

great prejudice to the respective owners thereof, and that it is to the best interests of all persons interested therein that said lands be sold." The appeal rests on the contention that these findings are not warranted by the record.

Partition in kind is preferred to partition by sale. Hoerr v. Hoerr, 140 Minn. 223, 165 N. W. 472, 167 N. W. 735; Keyser v. Hage, 143 Minn. 447, 174 N. W. 305. It devolves on the one seeking partition by sale to prove that one in kind cannot be made without great prejudice to the several owners. The statute so contemplates and authorities so state: 30 Cyc. p. 268; East Shore Co. v. Richmond Belt Ry. Co. 172 Cal. 174, 155 Pac. 999; Hellier v. Syck, 147 Ky. 762, 145 S. W. 1110; Shorter v. Lesser, 98 Miss. 706, 54 South. 155; Kluthe v. Hammerquist, 45 S. Dak. 476, 188 N. W. 749; Croston v. Male, 56 W. Va. 205, 49 S. E. 136, 107 Am. St. 918; Bracken v. Everett, 95 W. Va. 550, 121 S. E. 713; Idema v. Comstock, 131 Wis. 16, 110 N. W. 786, 120 Am. St. 1027.

Tested by this rule, is the finding justified? We think not. As to the bulk of the 2,250 acres in which the defendant corporation has a one-fourth interest there is clearly no obstacle to a fair division in kind, for none of it can serve either as dam sites or for flowage. It is all of the same general character, rough, stony, unfit for cultivation except in patches, having little merchantable timber, but all having immature stands of trees, and the average value being $3 per acre. We also think there should be no serious objection to a partition in kind of the fractional government subdivisions abutting the south shore line of the river over a four-mile stretch. Since it is necessary, in order to use the waterpower to advantage, to develop as a unit all the power of which the river is capable, all the dam sites and flowage rights available in the whole course of the river from the Indian Reservation to lot 3 in section 19 will be required. The proportionate value of dam sites and flowage rights cannot differ greatly, both are equally necessary. The surface of the land contiguous to the river being open and visible, it is easily ascertained what area of the several government lots will be required either for flowage or dams and taken into account in a division in

kind between the owners.   The evidence makes it clear also that a full development of the potential waterpower of the river will require the use of lot 1 of section 19 in which the McDougalls have a third interest, at least the entire north part thereof bordering the river will be needed, and it can make little difference who gets the westerly, middle or easterly third so far as value is concerned.   It does not appear that lot 3 in section 19 will be needed at all in any improvement of the waterpower, and no reason appears for refusing to partition of that lot in kind.

In determining whether or not there must be a sale, the fact should be considered that no power can be developed and utilized unless the party who so undertakes also owns or controls the land needed for dams and flowage on the Canadian side of the river, and the land owned exclusively by plaintiff, namely, the fractional government lots comprising the north half of section 24 above referred to. There is some testimony tending to show that plaintiff may be able to get the permission of both governments to dam the river for development purposes.   This goes to show that plaintiff is the only bidder in sight, if a sale be had.   If so, it will be for its interest to have the sale at a low figure and wholly to the disadvantage of its cotenant.   The result would be either to force defendants to take great chances, should they attempt to bid a sum approximating a fair value of the land for power development, of not being able thereafter to acquire the necessary Canadian property, or that wholly owned by plaintiff, or of the governmental permits absolutely needed, or else they must let plaintiff have it at whatever price it saw fit to bid.   The evidence does not disclose that there is any outside party ready to buy at a fair price if a sale were had, nor that there is any prospect in the near future of an attempt to develop the waterpower of the river.   It does not appear that plaintiff is a corporation so organized that it may exercise the power of eminent domain for the acquisition of the needed land.   But it seems to us such a corporation alone could make use of the river for power purposes, and when that time comes the lands needed by it may be acquired by condemnation from the parties to this litigation with more fairness to

the rights of every one concerned, if prior thereto there has been a partition in kind, instead of a forced sale now, when no one but plaintiff is in position to bid.

Under the present statutes (G. S. 1923, §§ 7432, 7433, 7535), corporations for the development and distribution of waterpower may acquire the land needed for condemnation. Minn. C. & P. Co. v. Pratt, 101 Minn. 197, 112 N. W. 395, 11 L. R. A. (N. S.) 105. We readily agree with the holdings in Idema v. Comstock, supra, and Croston v. Male, supra, that when it is made to appear that the value of each share if partition is made will be materially less than the share of money equivalent that could probably be had on a sale of the whole, it warrants a judgment directing a sale. But under the record here we think this does not appear. On the contrary we deem it likely that condemnation proceedings will result in much better price to the present owners after partition in kind than could be now obtained from a sale under a judgment herein at which the only probable bidder would be plaintiff whose interests would be best served by a low price. In 20 R. C. L. p. 774, it is stated:

"A sale cannot be decreed in partition merely to advance the interests of one of the owners; before ordering a sale, the court must ascertain that the interests of all will thereby be promoted."

Respondent cites several cases where the lands were not partible. Some are where extensive improvements have been constructed which would be greatly reduced in value and fail of their purpose if most of the land to be served thereby should be separated therefrom. Keyser v. Hage, supra. Others where a partition in kind would result in practically unusable parts. Hennes v. Huston, 93 Minn. 334, 101 N. W. 1133; Hunt v. Meeker County Ab. & L. Co. 135 Minn. 134, 160 N. W. 496. In the same class are Truth Lodge v. Barton, 119 Iowa, 230, 93 N. W. 106, 97 Am. St. 303; Heald v. Kennard, 180 Mass. 521, 63 N. E. 4; Kluthe v. Hammerquist, supra; Idema v. Comstock, supra; East Coast Cedar Co. v. People's Bank, 49 C. C. A. 422, 111 F. 446. In the partition of lands underlaid with deposits of minerals, coal, oil or gas a different rule governs growing

out of the fact that it is practically impossible to ascertain or delimit the deposit, or the varying cost of mining or extracting the same, and also, in cases of that nature, development exhausts the chief value of the property, or where the mineral is fugitive in character like oil or gas, hence partition is usually by sale. The same rule applies to the division among co-owners of water rights, mining rights not attached to the ownership of the surface and franchises, because of the impracticability of dividing that which is uncertain as to location and extent, or which must of necessity be worked or used as a unit.

Typical cases wherein sale is proper are: Sheffield C. & I. Co. v. Alabama F. & I. Co. 185 Ala. 50, 64 South. 67; McGillivray v. Evans, 27 Cal. 93; Watford O. & G. Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. 144; Brown v. Cooper, 98 Iowa, 444, 67 N. W. 378, 33 L. R. A. 61, 60 Am. St. 190; Gulf Refining Co. v. Hayne, 138 La. 555, 70 South. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130; Van Dyck v. Bloede, 128 Md. 330, 97 Atl. 630; Kemble v. Kemble, 44 N. J. Eq. 454, 11 Atl. 733; Hall v. Vernon, 47 W. Va. 295, 34 S. E. 764, 49 L. R. A. 464, 81 Am. St. 791; Dangerfield v. Caldwell, 81 C. C. A. 400, 151 F. 554.

In the case of Brown v. Cooper, supra, it appears that the parties were owners in common of a developed waterpower, consisting of dam and sluiceways furnishing power to two mills not owned in common, and that the lands abutting the dam and stream on both sides thereof were in separate tracts, all of which were owned in severalty. Of course, in such a case there could not well be a division in kind with the necessary complications going with the repair and maintenance of the power plant.

Our conclusion is that the learned trial court erred in the findings challenged. Upon this record defendants were entitled to partition in kind.

The order is reversed.