JOHNSON, et al, Respondents, v. HENDRICKSON, et al, Appellants

(24 N. W.2d 914)

(File No. 8783. Opinion filed November 18, 1946.)

**W. C. Brower,** of Clark, and **Hanten & Henrikson,** of Watertown, for Appellants.

**Geo. F. Sherwood,** of Clark, and **Austin & Lovre,** of Watertown, for Respondents.

SICKEL, J. This is an action for the partition of real property. Henry W. Bauman and Katie B. Bauman were husband and wife. Their children consisted of three, named Grace, Arthur, and Vernon. The husband died intestate in 1904, leaving an estate consisting of an improved quarter section of land in Clark County. The decree of the circuit court determined the right of inheritance to this land as follows: One-third to the widow, two-ninths to each of the three children, all subject to the homestead right of the widow. The widow then married the defendant Karl Hendrickson. The children of this marriage consisted of twin boys named Kenneth and Karrol. Katie B. Hendrickson, widow of Henry W. Bauman, wife of Karl Hendrikson and mother of all the children, never moved from this land during her lifetime. Karl Hendrickson, her husband, lived there with her until she died, and still lives upon the land. All the children lived on this land during their minority and at various periods of time after attaining their majority. The mother died in May 1944 and left her property by will as follows: To her husband, Karl Hendrikson, one-half; to each of the children of the second marriage one-fourth; to the children of her first marriage, five dollars each. Thus, the ownership of the quarter section of land involved in this action is as follows: Grace Bauman Johnson, Arthur Bauman

and Vernon Bauman, two-ninths each; Karl Hendrickson, one-sixth; Kenneth and Karrol Hendrickson, one-twelfth each. These interests are subject to the homestead rights of Karl Hendrickson in the one-third interest owned by Katie B. Hendrickson at the time of her death. Plaintiffs in this action are the three children of the first marriage of Katie B. Hendrickson. They allege in their complaint that the land is so situated that it cannot be partitioned among the various owners either individually or in groups, without prejudice to such owners, and ask that it be sold in one tract. Defendants deny that the partition in kind would be prejudicial to the owners. The circuit court determined the claims and liabilities of all the parties as to mortgages paid and improvements made, and adjudged that the land be sold. From this decree the defendants have appealed.

 Appellants say in their brief:

"Appellants, the defendants below, are collectively the owners in common of an undivided one-third of said land; and they desire and demand by their answer and cross complaint that partition of the land be made in kind; and they desire that their proper proportion of the land itself, including the building improvements thereon which are adjacent to other unimproved land owned by the defendants, be allotted to them collectively and in common, subject to the homestead rights and interests of Karl Hendrickson. * * * Thus the main issue between the parties and the main question presented for review, is whether the land could and should be partitioned in kind, or whether partition should be made by a sale of the entire tract and division of the proceeds."

The appellant then proposed that the partition in kind be made by allotting to them, as owners collectively of a one-third interest in the land, the southeast forty-acre tract with all the buildings and improvements situated thereon, and the hog house now on the southwest forty-acre tract, and by allotting to the three respondents, as owners of a two-thirds interest in the land, the other three forty-acre tracts with no buildnigs, but upon which is situated a forty-acre slough. The first question presented then is whether

the court was justified in deciding that the land be sold. SDC 37.1412 provides in part:

"If it appear to the satisfaction of the Court that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the Court may order a sale thereof * * *."

The language of this statute means that a sale may be ordered if it appear to the satisfaction of the court that the value of the share of each cotenant, in case of partition, would be materially less than his share of the money equivalent that could probably be obtained for the whole. Idema v. Comstock, 131 Wis. 16, 110 N. W. 786, 120 Am. St. Rep. 1027; Williamson Inv. Co. v. Williamson, 96 Wash. 529, 165 P. 385; 20 R. C. L., Partition, § 49. The above rule was approved by this court in the case of Kluthe v. Hammerquist, 45 S. D. 476, 188 N. W. 749. Under the terms of the statute quoted above a sale is justified if it appears to the satisfaction of the court that the value of the land when divided into parcels is substantially less than its value when owned by one person. This land is now owned by six persons. The largest individual interest is two-ninths and the smallest is one-twelfth. Partition in kind would require the division of the land into not less than four parcels: Two-ninths to each of the three respondents, and one-third to appellants, collectively. It is a matter of common knowledge in this state that the division of this quarter section of land, located as it is, into four or more separate tracts would materially depreciate its value, both as to its salability and as to its use for agricultural purposes. Cf. City of Ft. Worth v. Burgess, Tex. Civ. App., 191 S. W. 863; Long Fork Ry. Co. v. Sizemore, 184 Ky. 54, 211 S. W. 193; 31 C. J. S., Evidence, § 95, p. 692; 23 C. J., Evidence, § 1993 (22; 31 C. J. S., Evidence, § 101, p. 701. The fact that it would be an advantage to appellants to have the farm partitioned according to their demands because of their ownership of adjoining land, is immaterial. Todd v. Stewart, 199 Iowa 821, 202 N. W. 844.

■ In paragraph eleven of appellants' proposed findings of fact they request that the court allot to appellants,

who own a one-third interest in the farm, approximately one-third of the acreage contained therein, leaving to respondents who own the other two-thirds interest in the land, the remaining acreage, forty acres of which is worthless slough, to be divided amongst the three of them. They then ask the court to determine the value of the respective tracts of land so partitioned, also the value of the improvements on the land allotted to appellants, and that the court direct appellants to pay respondents their two-thirds share of the excess. SDC 37.1427 makes the following provision for an award of owelty:

"When it appears that the partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, and a partition be ordered, the Court may adjudge compensation to be made by one party to another, on account of the inequality; * * *."

This statute applies only to those cases in which a partition in kind be ordered. The circuit court did not decree a partition in kind, but rightfully decided that the farm be sold, on the ground that partition in kind would materially lessen the value of the interests of the several owners. Since the land is to be sold there will be no allotment of shares in the land to anybody. The proceeds of the sale will be apportioned according to the interests of the several owners, and hence there is no occasion for owelty in this case. Wrenn v. Gibson, 90 Ky. 189, 13 S. W. 766; Note Ann. Cas. 1914A 651.

■ Appellants also offer, as an alternative, to purchase the two-thirds interests of the three respondents in the land by paying to them the sum of $800 each. This latter proposition is an offer of settlement, not a proposed plan of partition. The law favors the compromise and settlement of disputed claims because it is the interest of the state that there should be an end to litigation, but such offer does not present a justiciable question. It is the function of the court to hear and decide questions of law and fact, not to use its influence to bring about the composition of disputes.

The widow inherited from her first husband an un-

divided one-third interest in the farm. After she married appellant Karl Hendrickson in 1909 she continued to occupy the farm as a homestead with her children, her second husband, and the children of the second marriage. During such occupancy they remodeled the house, built the barn, hog house, granary, wash house, milk house, chicken house, fences, and two wells, at a cost of over $9,000. Appellants Karl Hendrickson and the two sons of the second marriage claim in this action that as the devisees of Katie B. Hendrickson, and present owners of an undivided one-third interest in the farm they are entitled to credit for such improvements.

The rule at common law is that a tenant in common cannot compel his cotenants to contribute to his expenditures for improvements placed by him on the common property without the consent or agreement of the cotenants. 62 C. J., Tenancy in Common, § 122. It is also the general rule, with some exceptions not pertinent to this case, that a life tenant who makes permanent improvements upon real property with full knowledge of his title will be presumed to have made them for his own benefit, and that he cannot recover anything therefor from the remainderman. 31 C. J. S., Estates, § 45, p. 56; 33 Am. Jur., Life Estates, Remainders, etc., § 456; Annotation 128 A. L. R. 258. The rule in regard to the rights of tenants in common as stated above has been modified by courts of equity in partition cases. The reason is that: "The power to partition land is an acknowledged and independent head of equity jurisdiction; * * *" 47 C. J., Partition, § 213. The equitable principle upon which this modification is made is stated in Story's Eq. Jur., 14th Ed., § 891, as follows:

"* * * In all cases of partition a Court of Equity does not act merely in a ministerial character and in obedience to the call of the parties who have a right to the partition, but it founds itself upon its general jurisdiction as a Court of Equity, and administers its relief ex aequo et bono according to its own notions of general justice and equity between the parties."

It is upon this principle that courts generally make suitable allowance, on partition, for improvements made in

good faith by a cotenant in possession, to the extent that the value of the property has been enhanced thereby. 47 C. J., Partition, § 497; Annotations 1 A. L. R. 1189, 122 A. L. R. 234. This modification of the common law rule, however, does not alter the rule as to life tenants who have no interest in the reminder, or their successors in interest after the termination of the life estate.

■ In this case, Katie B. Hendrickson had a homestead interest in the land from the date of her first husband's death until she died in 1944. She also owned a one-third interest in it by right of inheritance from her first husband. She was, therefore, a tenant in common with the children of the first marriage, and a life tenant by virtue of her homestead right. Under the rules to which we have referred she would be entitled in partition, as a tenant in common, to contribution for improvements made, but as a life tenant such contribution would be denied. Cases like this, where the person making the improvements has a life estate and is also a tenant in common, are generally decided by the court on equitable principles, that is, "according to its own notions of general justice and equity between the parties." Brookfield v. Williams, 2 N. J. Eq. 341; Hall v. Piddock, 21 N. J. Eq. 311; Broyles v. Waddel, 11 Heisk., Tenn., 32; Johns v. Johns, 93 Ala. 239, 9 So. 419; Chambers v. Hunton, 222 Ala. 482, 132 So. 713; Staples v. Pearson, 230 Ala. 62, 159 So. 488, 98 A. L. R. 852; Killmer v. Wuchner, 79 Iowa 722, 45 N. W. 299, 8 L. R. A. 289, 18 Am. St. Rep. 392; Kinnett v. Ritchie, 223 Iowa 543, 273 N. W. 175. Contra: Porter v. Osmun, 135 Mich. 361, 97 N. W. 756, 98 N. W. 859; 3 Ann. Cas. 687; Larmon v. Larmon, 173 Ky. 477, 191 S. W. 110; Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373.

This case does not deal with the right to offset the value of improvements against rents and profits accruing after the termination of the life estate. Such rents and profits have been accounted for in this action. Neither did the widow who made the improvements believe or understand that she was the sole owner of the remainder. Decisions of other courts dealing with such propositions are not pertinent to the facts in this case. Here the evidence shows that im-

provements consisting of a house, barn, granary, chicken house, and shed, all old, were situated upon this farm in 1909. In 1910 a granary was built, in 1911 a chicken house and in subsequent years the barn was torn down and a new one constructed in its place. The house was repaired and remodeled, a hog house, wash house, garage, milk house, fences, and wells were also constructed in the following years.

██ In the year 1909 the mortgage on the homestead was $2500. It was increased to as much as $7,000 to pay for improvements, debts, and to buy another quarter section of land across the road. Arthur Bauman was born in 1893 and remained at home until he was twenty-seven years of age. Grace Bauman was born in 1895 and remained at home until her mother died in 1944. Vernon Bauman was born in 1898 and remained at home until he was thirty-six years of age. These three children of the first marriage worked but received no wages while at home, and none of them had separate incomes, except the daughter from some chickens and Vernon from some farming which he did on his own account. During all the time that these three children of the first marriage remained at home they and their mother occupied the homestead as such, and owned it as tenants in common. The second husband and the children of the second marriage were members of the same family. The mother was the head of this family. She owned all the personal property and managed all the family affairs. The improvements, incumbrances, and additional land were made and paid for out of the land by the combined efforts of all. The respondents made substantial contributions to the family income out of which these things were accomplished, during their minority, and also during their majority. The family had the use of the greater part of the improvements over a period of more than thirty years. These improvements and the payment of the mortgage have greatly enhanced the value of the estate. Karl Hendrickson and his two sons now own a one-third interest in the homestead, improved and free from debt, and the additional quarter section of land. The circuit court determined that under these circumstances an allowance to Karl Hendrickson and his sons for the improvements

made and the indebtedness paid would be inequitable, and this conclusion is amply supported by the evidence.

██ ██ Karl Hendrickson has a homestead right in the one-third interest of the land which he inherited from Katie B. Hendrickson, and he contends that this fact entitles him to partition in kind. The rule as stated in Thorn v. Thorn, 14 Iowa 49, 81 Am. Dec. 451, and approved in Smith v. Wright, 195 Minn. 589, 263 N. W. 903, is that:

"The homestead right is derived alone from the statute, but cannot be claimed and enforced by one tenant in common to the detriment of his co-tenants. Hence if he should happen to have erected and occupied a homestead on a piece of land which could not be partitioned without great prejudice to his co-tenants, it would have to be sold, but in that event the court would see that the value of the homestead and improvements, distinct from the land, would be secured to the party at whose expense and labor they had been made."

See also Annotation 140 A. L. R. 1170.

No doubt the circuit court would have made an equitable adjustment of the proceeds of sale, so as to attach the homestead rights of Karl Hendrickson to one-third of such proceeds, if a request therefor had been made.

Finding no error in the record the judgment is affirmed.

POLLEY, J., not sitting.