Robert SCHNELL, also known as
Robert D. Schnell, Plaintiff
and Appellee,

v.

Joan G. SCHNELL, Defendant
and Appellant.

Civ. No. 10470.

Supreme Court of North Dakota.

March 21, 1984.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee; argued by John L. Sherman, Dickinson.

Zuger & Bucklin, Bismarck, for defendant and appellant; argued by Robert V. Bolinske, Bismarck.

SAND, Justice.

Joan G. Schnell appealed from a judgment granted in favor of her former husband, Robert D. Schnell, ordering the ranch

property which the two hold as tenants in common be sold rather than partitioned in kind.

Robert and Joan Schnell were married in 1955. The same year they began a ranching partnership with Robert's father on a ranch in Adams County. In 1964 Robert and Joan purchased the ranch from Robert's father at a price near market value. In 1974 they were divorced, and two years later the court ordered that the ranch properties, both real and personal, be placed in a trust. The trust "terminated" in late 1979, after which Robert and Joan operated the ranch as a partnership until Robert, in December 1981, petitioned the court to have the ranch partitioned, resulting in the judgment from which Joan appealed.

The Schnell ranch contains 4,420 acres. Schnells also lease 1,600 acres, most of it contiguous. The ranch includes about 700 head of cattle, numerous pieces of machinery, and many buildings. The buildings include a sales barn, feed building, horse barn, machine shed, several pole barns, and three homes. The first home is an expansive ranch home in which the couple lived until their divorce. After the divorce, Joan remained in the home and Robert built a second, smaller home a short distance away. The third home is for the hired man.

The trial court found from the evidence presented that the value of each cotenant's share from a partition would be substantially less than the money each would receive from a sale of the whole. The court ordered that the property be sold and that the proceeds from the sale be equally divided between the parties.

The primary issue on appeal is whether or not the court erred in concluding that the ranch should be sold rather than partitioned in kind.

■ Our scope of review of a case tried without a jury is basically governed by the rule that findings of fact will not be set aside unless clearly erroneous. North Dakota Rule of Civil Procedure 52(a). A finding of fact is "clearly erroneous" when, even though there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *American Mutual Life Ins. Co. v. Jordan,* 315 N.W.2d 290 (N.D.1982). However, this Court is not governed by Rule 52(a) if the trial court's findings are based upon an erroneous conception of the law. *Diemert v. Johnson,* 299 N.W.2d 546, 548 (N.D. 1980). After reviewing the findings of fact, many of which can be labeled arguments or conclusions of law, and the memorandum decision, we conclude that the trial court's decision was premised upon an erroneous conception of the law on partition. The court primarily applied the provision "without great prejudice to the owners" to the position and interest of Robert without giving equal recognition to the position and interest of Joan, a tenant in common (partnership) with Robert. Furthermore, after considering all of the evidence we are convinced a mistake has been made.

■ Historically, an action for partition is in the nature of a chancery action, cognizable under equity powers. *Knight v. Harrison,* 43 N.D. 76, 174 N.W. 633, 636 (1919); *Henkel v. Henkel,* 282 Mich. 473, 276 N.W. 522, 523 (1937). Current statutory law provides that a partition is a matter of right when several cotenants are in possession of real property as tenants in common. North Dakota Century Code § 32–16–01; *Berg v. Kremers,* 181 N.W.2d 730, 732 (N.D.1970). Section 32–16–01 provides:

"When several cotenants hold and are in possession of real or personal property as partners, joint tenants, or tenants in common, in which one or more of them have an estate or inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, *if it appears that a partition cannot be made without great prejudice to the owners.* Real and per-

sonal property may be partitioned in the same action." [Emphasis added.]

The test for determining whether real property should be sold or partitioned in kind is statutory. NDCC § 32–16–12 provides:

"If it is alleged in the complaint and established by evidence, or if it appears by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, *is so situated* that partition cannot be made *without great prejudice* to the *owners*, the court may order a sale thereof. Otherwise, upon the making of requisite proof, it must order a partition according to the respective rights of the parties as ascertained by the court and appoint three referees therefor, and must designate the portion to remain undivided for the owners whose interests remain unknown or unascertained." [Emphasis added.]

The legislative intent of §§ 32–16–01 and 32–16–12 is clear and is consistent with case law and statutory law in a majority of jurisdictions. The law favors partition in kind where it can be made without great prejudice to the parties. 68 C.J.S. *Partition* § 125 (1950); *Berg, supra* at 731, Syll. ¶ 3; *Pigeon River Lumber Co. v. McDougall,* 169 Minn. 83, 210 N.W. 850, 851 (1926). The burden of proving that partition in kind cannot be made without great prejudice is on the party demanding a sale. *Berg, supra,* at 733; *Pigeon River, supra,* at 851. Unless great prejudice is shown, a presumption prevails that partition in kind should be made. *Berg, supra* at 735. Forced sales are strongly disfavored. *Richmond v. Dofflemyer,* 105 Cal. App.3d 745, 757, 164 Cal.Rptr. 727, 733 (1980).

In determining if great prejudice would result from a partition, the question is not which alternative would provide optimal economic value or maximum functional use. The resultant parcels need not be the economic, functional or aesthetic equivalent of the original parcel. Rather, great prejudice exists when "the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained from the whole." *Berg, supra* at 733. Thus, sale of land in partition should not be ordered unless it is necessary to protect the parties from "serious pecuniary injury." *Ibid.* This applies to both Joan and Robert, not just Robert. Furthermore, owelty, NDCC § 32–16–41, may be employed in certain instances to bring about an equitable partition.

The trial court's decision is based principally upon a concern that a partition would destroy the "usefulness" and "efficiency" of the ranch. In so holding, the court noted that the pastures were "grouped to efficiently accommodate year-round grazing," that the pastures were "planned and balanced," and that partition may result in decreased animal carrying capacity. The court also expressed concern that new machinery, wells, buildings, and fencing would be required if the ranch was partitioned. The court concluded that the Schnell Ranch was a "model" ranch and that "By partitioning the ranch the efficiency and balance planned and learned ... would be lost."

While efficient agricultural management is a desirable objective, it is only one factor among several in an action for partition and sale. In determining if great prejudice would result by partition in kind, emphasis must also be placed upon the situation of the parties and their respective financial abilities, including the financial ability of one of the parties to purchase the property, the location and character of the property, and the size and utility of the respective shares. *Berg, supra* at 731, Syll. ¶ 6; 68 C.J.S. *Partition, supra,* § 127(d). Sentimental reasons, particularly in the preservation of a home, may also be considered, although they are subordinate to the pecuniary interests of the parties. *Fike v. Sharer,* 280 Or. 577, 571 P.2d 1252, 1254 (1977); 68 C.J.S. *Partition, supra.*

The situation of the parties in the instant case is significant and their respective financial abilities are dissimilar. Robert, 53,

has a degree in animal husbandry. In addition to his holdings on the Schnell Ranch he is a member of a partnership that leases ranch land in Montana and South Dakota that contains about 1,500 cattle. Robert is also an accomplished auctioneer and was designated "World Champion Auctioneer" in 1967. Joan testified that Robert usually spent about two-thirds of each year away from the ranch with auctioneering duties.

Joan, 50, is employed by the United States Department of Agriculture and lives in Virginia. She stated that her position is a political appointment which she believes is temporary. Although Joan has a degree in fashion merchandising, the record does not reflect that she has ever been employed in that field. She has instead spent most of her adult life raising a family of four, developing and supervising the ranch, and learning the ranching business. She has no other particular job skills. Thus, in comparing the respective situation of the parties it appears that Robert's career opportunities are more diverse than Joan's.

The respective financial ability of the parties is also significant. Joan's financial worth is based almost exclusively on her interest in the ranch. Robert, in addition to his Schnell ranch interest and his South Dakota and Montana ranching operations, receives significant income from his work as an auctioneer. Further, there is currently a mortgage on the property in the amount of $267,000.00. While the mortgage reduces the net equity of both parties, it would probably affect Joan's financial status the most. There is also a $78,-000.00 lien on the ranch property against Joan and in favor of Robert that was awarded during the divorce proceedings. Thus, Robert's superior financial status would likely enable him to more easily acquire the entire ranch if it is sold as one unit.

█ The record strongly suggests that Robert desires to continue operating the entire ranch and that a sale is one method of accomplishing that objective. No evidence or testimony was introduced indicating that someone other than Robert was interested in buying the ranch. The evidence and testimony support a finding that the ranch would be more beneficial to Robert if it is not partitioned in kind. However, the question in a partition action is whether or not partition can be accomplished without great prejudice to the owners; not to one of the owners, but to all of them. In *Trowbridge v. Donner*, 152 Neb. 206, 40 N.W.2d 655, 660 (1950), the court in effect held that a sale cannot be decreed merely to advance the interest of one of the owners. Similarly, 59 Am.Jur.2d *Partition* § 118, p. 865, states:

"A sale cannot be decreed in partition merely to advance the interests of one of the owners; before ordering a sale, the court must ascertain that the interests of all will thereby be promoted. Such a sale may be unwarranted, notwithstanding there are dower and curtesy estates in the property, and the land, because varying in quality, locality, and improvements, is not of uniform value, and, if a division in kind is made, some of the shares will be of small area. It has been held that in an action purely and only for partition, there can be no sale except for the reason that the land is indivisible, and that a sale for cost is void."

The relevant circumstances in an action for partition usually relate to "the land itself, and its location, physical condition, quantity, and the like." 68 C.J.S. *Partition* § 127(a) (1950); *Vesper v. Farnsworth*, 40 Wis. 357, 361 (1876). In *Vesper* the court construed a partition statute containing the "great prejudice" standard and held that "mere complication of owners' interests, having no relation to [the land, its location, physical condition, and quantity], does not necessarily render partition injurious to the owners or any of them." *Vesper, supra,* at 361.

In *Matracia v. Matracia,* 378 A.2d 1388 (R.I.1977), the court reviewed a lower court judgment directing that certain property be sold rather than partitioned in kind. The property consisted of two apartments on the first and second floors of a home owned by a couple as joint tenants. The

court ruled that although it might have been possible to award one apartment to each party, it would have been nearly impossible to divide the land upon which the property was located by metes and bounds. The court upheld the lower court, but noted that inconvenience, difficulty in making the partition, or substantial loss or injury to some of the parties does not affect the right of a court to exercise its discretion in ordering partition. *Matricia, supra*, at 1391.

Significantly, in *Matracia* the statute granted the court discretionary powers in ordering a partition and sale or a partition in kind. Our statute, however, provides that partition in kind shall be made unless it will cause great prejudice to the owners. Nevertheless, the Rhode Island court enunciated the applicble rule of law regarding inconvenience and hardship in a partition action.

In *Hammond v. Northwestern Construction & Implement Co.*, 19 N.D. 709, 124 N.W. 427 (1910), our Court approved partition by sale of lots within the city of Wishek. The rights of the parties involved a one-eighth interest, a one-fourth interest, and a one-half interest, whereas in the instant case we have only two tenants in common.

A similar conclusion was reached in *Idema v. Comstock*, 131 Wis. 16, 110 N.W. 786 (1907), involving two 40-acre tracts of land located at a considerable distance from any settlement. The tracts were valuable chiefly for the timber they contained. The court noted that a partition in kind would make one party the owner of one and a fraction of the 40-acre tract and the other party the owner of a small fraction of the tract. Under the circumstances, the court adopted the referee's report, which found that a partition in kind would result in great prejudice to the owners.

In *Johnson v. Hendrickson*, 71 S.D. 392, 24 N.W.2d 914 (1946), the court upheld a partition by sale of a quarter section of land containing 40 acres of slough. The land was owned by six persons; three held two-ninths interests, two held one-twelfth interests, and one held a one-sixth interest.

In *Brown v. Cooper*, 98 Iowa 444, 67 N.W. 378 (1896), the court considered partition of a "water power" on a river "consisting of a dam, bulkheads, raceways, retaining walls, ponds, etc." The court concluded that it would be impractical to order a partition in kind because of the nature and condition of the property. The court reversed the district court and directed that the property be sold and that the proceeds be distributed among the parties.

■ The foregoing cases and, more so, logic tells us that the smaller and more compact the area or property and the greater the number of persons having an interest in the property the more difficult partitioning in kind will be. Conversely, the greater and more expansive the area or property and the smaller the number of persons having an interest in the property, the easier partitioning in kind will be.

The testimony was conflicting with respect to the size and utility of the respective shares if a partition in kind were made. Robert called two witnesses, A.W. Knudson and Kent Rasmussen, to support his position. Knudson, a former bank manager in Richardton, North Dakota, and former land appraiser for the Federal Land Bank, served as trustee of the Schnell property while it was in trust from 1976 to 1979. Knudson testified that ranches are usually appraised and sold on an animal-unit basis. An animal-unit basis, Knudson explained, refers to the ability of a ranch to sustain a cow and a calf for one year. Knudson stated that, because of the nature of the grasses in the Schnell pastures, a partition would reduce the animal-unit capacity of the ranch. Knudson estimated that the reduced animal-unit capacity would reduce the market value of the ranch by $190,000.00.

Robert's second witness, Kent Rasmussen, is a former county extension agent and bank loan officer. He is currently a loan manager in Rapid City, South Dakota, for Equitable Life Assurance Co. and deals primarily with agricultural loans and first

mortgage real estate loans on agricultural property. Rasmussen testified that operating costs would increase significantly if the ranch were partitioned. He concluded that the value of each owner's share from a partition would be materially less than his share of the money equivalent that could probably be obtained from a sale of the whole.

Joan also introduced the testimony of two witnesses, Darrell Papka and Chris Christman, to support her position that partition in kind could be made without great prejudice to the parties. Papka, a farmer-rancher, banker, and real estate appraiser, owns a 4,300-acre farm and ranch about twenty miles from the Schnell ranch. Papka testified that Joan's partition plan would yield two workable farm-ranch units. Papka noted that the average farm-ranch in Adams County is about 1,500 acres, and he believed that Joan's plan would establish two parcels that would be better than the average farm-ranch in Adams County. Papka concluded that the value of the two resultant parcels would not be materially less than the proceeds that might be received from a sale of the ranch as a whole.

Christman, a 60-year-old rancher who operates a 2,700-acre ranch near the Schnell ranch, also testified that the ranch could be bifurcated without great pecuniary loss to either party. He further testified that the sale of two 2,200-acre parcels would bring more money than the sale of one 4,400-acre parcel. He based his assessment on what he believed were generally depressed land prices in the area. With less money to invest, he stated, fewer people could afford to purchase the ranch as one parcel.

Robert asserted that the average acreage figure was inapplicable because most of the farm-ranches in Adams County were primarily engaged in farming. Christman, however, disagreed and stated that at least one-third of the Schnell ranch is capable of being farmed. Christman claimed that even if none of the ranch was farmed the ranch could be divided into two workable ranches.

■ Under Joan's proposed division of the ranch,[1] she would receive 1,977 acres, nearly 500 acres more than the average farm-ranch in Adams County. Robert would receive 2,421 acres, nearly 1,000 acres more than the average farm-ranch. The trial court overlooked or disregarded that fact. While division based upon average acreage is not the dispositive factor in a partition action, it is worthy of consideration. See *Berg, supra,* at 735. In addition, Robert would retain the 1,600 acres of leased land. One thousand acres of the leased land consists of state school land that, by Robert's admission, is not subject to true competitive bidding. Robert explained that area school land bids are kept low because the ranchers have a "gentlemen's agreement" not to bid against each other. The likelihood that the school land will remain with Robert is supported by Robert's testimony that the land has been rented by the Schnells since at least 1955. In addition, there are 960 acres of adjacent private lands that are for sale. Robert has already bid upon the land and, under Joan's plan, the land would remain adjacent to Robert's parcel.

■ We are aware that some courts have held that in a partition action a court should not consider other land that an owner has acquired or may acquire. See *Johnson v. Hendrickson,* 71 S.D. 392, 24 N.W.2d 914, 916 (1946); 68 C.J.S. *Partition* § 127(a) (1950). The issue in this case, however, includes two major items: is the land physically divisible, and can the land be partitioned in kind without great pecuniary loss. Under the circumstances of this case, we believe that the availability of other land to avoid or reduce a loss is a factor in determining if possible pecuniary loss will constitute great prejudice to the owners.

---

**1.** We refer to Joan's proposal for division of the ranch only as a guide in analyzing whether or not the ranch could be partitioned without great prejudice to the parties. Our reference is not necessarily an endorsement.

We also believe that a proposal by one of the owners to lease the land back to another owner is a factor in determining if partition in kind can be made without great prejudice to the owners. The memorandum decision indicates that the trial court gave little if any consideration to Joan's testimony indicating that she was willing to lease the land back to Robert and their son Carter. Joan testified that if Carter continued working with his father, she would be willing to lease the land back to Carter and Robert for $6.00 an acre. Consideration of Joan's proposal in this case negates many of the findings that the trial court made in determining that the land should be sold.

The trial court's failure to seriously consider the feasibility of selling the land in parcels is a further indication that the court did not meaningfully consider the possible pecuniary gain or loss of each alternative. In determining if great prejudice would result from a partition in kind, its effect must be weighed against the effect of a sale of the land as a unit and the effect of a sale of the land in parcels.

In *Williamson Investment Co. v. Williamson*, 96 Wash. 529, 165 P. 385 (Wash. 1917), the court considered a partition statute similar to North Dakota's. The court observed that in the original jurisdiction of equity partition by sale did not exist, except where all parties were sui juris and consenting. Absent such capacity and consent, the division was always in kind, and where the land was incapable of exact or fair division, compensation for inequality was made by an award of "owelty of partition." *Williamson, supra*, at 388. The court noted that the inadequacy of that method led England and most of the states to enact "statutes conferring power upon the courts to make partition by sale of the land, when not partible in kind without greater injury than a sale would cause, independently of the consent of the parties." *Ibid.* The court observed, however, that partition has not lost its original purpose of a division without changing the existing character of the inheritance. *Id.*

Statutes conferring power upon courts to make partition by sale must be carefully construed because of the nature of the interest at stake. 68 C.J.S. *Partition* § 126, p. 189 states:

"The statutes authorizing the courts under certain circumstances to order a sale in order to effect a partition of real property were enacted to obviate hard cases, and were intended for a liberal use of the power of the court of equity in proceedings for partition or sale for partition of estates of joint owners or tenants in common. Such statutes have been regarded as innovations on the common law and in derogation thereof, and must be strictly construed. Strict compliance with the terms of the statute is necessary to the right of partition by sale, because they take away from the owner the right to keep his freehold in kind; and the sale is valid only where all the requirements of the statutes have been complied with."

Further, "statutory remed[ies] for partition [are] generally held to be cumulative" and do not "supercede the original jurisdiction in equity." *Henkel v. Henkel*, 282 Mich. 473, 276 N.W. 522, 523 (1937).

North Dakota Century Code § 32–16–41 embraces the owelty concept noted in *Williamson, supra*. It provides:

"When it appears that the partition cannot be made equal between the parties according to their respective rights without prejudice to the rights and interests of some of them, and a partition is ordered, the court may adjudge compensation to be made by one party to another on account of the inequality, but such compensation shall not be required to be made to others by owners unknown, nor by an infant, unless it appears that such infant has personal property sufficient for that purpose and that his interest will be promoted thereby. In all cases, the court has power to make compensatory adjustment between the respective parties according to the ordinary principles of equity."

NDCC § 32–16–41 substantiates the legislative intent expressed in NDCC § 32–16–12 that a partition in kind is favored unless it would result in great prejudice to the owners.

In *Thompson Estate Co. v. Kamm*, 107 Or. 61, 213 P. 417 (1923), the court ordered owelty payments in a partition action involving six storerooms built on two tracts of land located about 40 feet apart in Portland. Interpreting a partition statute nearly identical to NDCC § 32–16–41,[2] the court held that the storerooms should be partitioned in kind rather than sold on a depressed real estate market. The court stated that partition could be made even though the partition line may run through the middle of one room. The court reasoned that such a separation was possible in view of Oregon's statute permitting compensation from one party to another if the partition would be unequal. Such "owelty" payments the court said, however, should be used sparingly. *Thompson, supra*, at 419.

Given the duration of Joan's involvement with the ranch and her sentimental attachment to the land, her resistance to a partition and sale is logical. In this respect we note that the sale of real property against the wishes of a joint owner can be likened to a forced sale. Forced sales seldom produce the highest return on the property. In *Vesper v. Farnsworth*, 40 Wis. 357, 362 (1876), the court said that the power to convert real estate into money against the will of an owner "is an extraordinary and dangerous power, and ought never to be exercised unless the necessity therefor is clearly established." Similarly, in *Haggerty v. Nobles*, 244 Or. 428, 419 P.2d 9, 12 (1966), the court observed that although a court must occasionally order a sale in an appropriate case, "it is obnoxious to compel a person to sell his property."

If only two persons are owners of property and each treasures its heritage, parti-

tion in kind will generally preserve those personal interests better than a partition and sale. In this respect, Joan has an equal right to pursue her personal interests. She helped develop the ranch from its infancy and she frequently managed the ranch while Robert tended to auctioneering interests. Her rights in the property equal Robert's rights, and they include the right of ownership, the right to preserve the heritage of her labors, and the right to pass the property to her heirs. Indeed, the law favors partition in kind because it does not compel a person to sell property against a person's will and it does not disturb the existing form of inheritance. *Phillips v. Phillips*, 170 Neb. 733, 104 N.W.2d 52, 56 (1960).

In reviewing the situation of the parties, the location and character of the property, as well as the size and utility of the respective shares if a partition in kind were made, it appears that the ranch may be divisible in kind. The testimony, diagrams, and pictures introduced indicate that the ranch could be divided so that each parcel would have sufficient water, pasture, hay, barn, and corral facilities. The parties' two homes are about one-quarter mile apart and are separated by several shelter belts, buildings, and a small creek. Each home could have a separate access. About one and one-half mile of additional fencing and one or two easements may be required, but none of the alterations appear significant.

The foregoing factors compel the conclusion that the ranch can be partitioned in kind without doing great prejudice to the owners, Robert and Joan.

Accordingly, the case is remanded with directions that the district court vacate[3] or set aside the judgment and appoint referees pursuant to NDCC § 32–16–12 to devise a plan to partition in kind the real and personal property.

---

**2.** The Oregon statute in effect in 1923 is quoted in *Thompson, supra*, at 418. Oregon's law has remained largely unchanged. See Or.Rev.Stat. § 105.250 (1981).

**3.** The trial court's decision to award interest to Robert on his $78,000 lien is also vacated.

Joan, in her reply brief to this Court, offered to accept between $81,500 and $100,000 less than her share on real and personal property to minimize any pecuniary loss from a partition in kind. This offer was not part of the record and cannot be, nor was it, considered in arriving at our conclusion. If Joan makes the same or a similar offer on remand the referees may consider her plan for partition in kind and her offer of owelty, but the referees are not bound to accept either. However, consideration must be given to contiguity of the land partitioned.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

I would have limited the scope of review, as we are obligated to do by Rule 52(a), NDRCivP, and affirmed the judgment appealed from. Other than an unusual claim that the trial court should not have considered the interest matter, Joan raises only one controlling issue: Is the finding of fact that the property cannot be partitioned without great prejudice to the owners clearly erroneous?

The significant finding is camouflaged in 15 pages of recitations variously labeled "findings of fact" or "conclusions of law," most of which only remotely address the only issue in the case. The pertinent finding is divided into two parts, which include the following statements:

"VI.

.    .    .    .    .

"(h) The personal property cannot be divided without great prejudice to the owners...."

"XI.

"... that partition of Schnell Ranch cannot be accomplished without great prejudice to the owners; ..."

Joan could have argued that: (1) there were inadequate findings, *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972), or they

do not disclose the basis for the decision, *Ellendale Farmers Union Cooperative Ass'n v. Davis*, 219 N.W.2d 829 (N.D.1974), or they are too "sparse and conclusory," *Commissioner v. Duberstein*, 363 U.S. 278, 292, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960); (2) the findings are without substantial evidentiary support, *Winter v. Winter*, 338 N.W.2d 819, 822 (N.D.1983), or, even though there is some evidentiary support, this court should be left with a definite and firm conviction that a mistake has been made, *Gross v. Sta-Rite Industries, Inc.*, 336 N.W.2d 359, 361 (N.D.1983); or (3) that the finding was induced by an erroneous view of the applicable law, *Winter v. Winter, supra*. Instead, as I interpret Joan's argument, she urges that we give her a trial de novo, which was abolished in 1971 by the repeal of § 28–27–32, NDCC; or that we should view the facts differently somehow than the trial court did, which we have repeatedly said we are not entitled to do, see *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54, 60 (N.D.1983); or that we should substitute our judgment for that of the trial court, which we are also not permitted to do, *State v. Livingston*, 270 N.W.2d 556, 557 (N.D.1978).

Trial judges do have the opportunity to judge the credibility of witnesses which gives them an advantage that Rule 52(a) recognizes and which was recognized even when appeals resulted in trials de novo. See my concurring opinion in *Jerry Harmon Motors v. Farmers U. Grain Term.*, 337 N.W.2d 427 (N.D.1983); also *Nastrom v. Nastrom*, 284 N.W.2d 576, 585 (N.D. 1979).

We are guided by a rule of reasonableness in our interpretations of statutes (§ 1–02–38(3), NDCC) and when we examine people's conduct (§ 31–11–05(33), NDCC), and that means that we always try to avoid ludicrous and absurd results, *Skoog v. City of Grand Forks*, 301 N.W.2d 404 (N.D.1981). I see no reason for treating Rule 52(a), NDRCivP any differently.

It may be very likely that if I had been the trier of fact in this case instead of

Judge Wilson, I would have found as a fact that:

"The partition of the real and personal property in this case will not result in great prejudice to the owners."

Nevertheless, Judge Wilson did not arrive at a ludicrous or absurd result. I think that I understand the basis of his decision. There is substantial evidence which supports the finding that he made. I am not convinced that a mistake has been made or that the decision was induced by any erroneous views of the law. I have no inclination to retry the case, and I have some doubts about the omniscience of appellate courts. See Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn. L.Rev. 751 (1957).