WHITE (Stoughton) and another, Plaintiffs and Respondents, vs. TILLOTSON, Defendant and Appellant: WHITE (Alice), Intervening Defendant and Respondent.*

*February 9—April 5, 1950.*

---

For the appellant there were briefs by *Bull & Biart,* attorneys, and *J. Michael Warner* of counsel, all of Madison, and oral argument by *Mr. Benjamin Bull* and *Mr. Warner.*

*H. A. Schmidt* of Lake Mills, for the respondents Stoughton White and Ellen White.

For the respondent Alice White there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Richard C. Smith.*

HUGHES, J.    In addition to the appeal from the judgment ordering the property sold, appellant seeks to challenge the mortgage, contending that the devise by A. D. Faville to his sister effected a discharge of her mortgage.

We deem it sufficient to note that the trial court has not attempted to pass upon this question, but has merely ordered enough of the proceeds segregated to protect Alice White in the event it concludes that she has that amount coming. There having been no determination of that issue, the attempted appeal is premature.

The testimony offered by the plaintiffs was to the effect that a large farm can be operated more economically under mechanization and modern methods, and that therefore it should be sold in one unit rather than divided.

It appears quite clearly from the testimony of Ellen White that she is interested in acquiring the title to the whole farm. After testifying on direct examination that she thought a large farm desirable for diversified farming and as a dairy unit, she stated on cross-examination:

"I want a farm. . . . I think the whole farm should be as a unit."

"*Q.*    You would like the opportunity to acquire it as a unit?    *A.*    Yes, I would. . . . Generalized farming includes dairying."

The testimony of two experts produced by plaintiffs was to the effect that a large farm can be operated more profitably than a small one, and that there might be some loss of margin

of profit if the acreage were divided. Both P. E. McNall, a professor from the university, and Oliver W. Rewey, manager of farms for absentee owners, testified that the desirable unit is one with large acreage because with mechanization it can be more profitably farmed than a small unit.

There was also some testimony that the cow barn was so large that it would be fully serviceable only on a large dairy farm, and that division would result in loss of part of the barn's value.

On behalf of the defendant there were as witnesses practical farmers from Jefferson county and a real-estate broker who specializes in farm sales, who testified that the acreage could be divided into two farms as suggested by the defendant Tillotson, and that each farm would have approximately one hundred thirty acres of tillable land. They testified that the entire farm had a value of $38,000 and that if divided as Tillotson suggested, the south farm with the better buildings would be worth $27,000 and the north farm, $17,000 or $18,000. Several defense witnesses testified to what is almost common knowledge,—that the larger the farm offered for sale, the more limited the prospective buyers become.

It appears from the record that the plaintiffs, or at least one of them, are desirous of obtaining the whole farm. The defendant is so desirous of retaining half that he proposed a plan for division and offered to permit the plaintiffs to have first choice.

We do not criticize the aim of either party. The law, however, supports the defendant in his position.

At common law the partition of property had to be in kind. Whether there is an inherent right in a court of equity to order a sale where conditions require it is immaterial. The power exists by statute. Sec. 276.20, Stats., provides:

"If the court shall find that the land or any portion thereof is so situated that partition cannot be made *without great prejudice* to the owners, it may order the sheriff to sell the premises so situated at public auction. Such order shall

direct the terms of credit which may be allowed for any of
the purchase money, which the court shall think proper to
direct to be invested, or is required to be invested for the
benefit of any unknown owners, infants, nonresidents, or
tenants for life, years, or by the curtesy."

It is stated in 40 Am. Jur., Partition, p. 73, sec. 83 :

"The burden of proof to establish the necessary requisites
to a sale of land rather than a partition in kind is on the party
alleging the necessity and advisability of such sale, and it has
been held that a finding that a sale is necessary, not based on
the consent of the parties or the report of commissioners or
on evidence heard by the chancellor, will not support the order
of sale."

In *Vesper v. Farnsworth* (1876), 40 Wis. 357, 361, 362,
which was an appeal from an order of sale, the court said:

"By the third report the court is informed, that, consider-
ing all of the circumstances of the case, and particularly the
reversionary rights of some of the parties in the premises,
partition cannot be made without great prejudice to the own-
ers.
"Now, as before observed, we do not perceive how the
mere fact that the title is complicated by the outstanding life
estate, can of itself render a partition injurious to the owners,
which would not otherwise have been so. If there are facts
and circumstances which show that owing to the peculiar na-
ture of the titles of the different owners, partition is imprac-
ticable, the same have not been brought to the knowledge of
the court. Until that can be done, the court cannot properly
order the premises to be sold. It was so held in *Tucker v.
Tucker,* 19 Wend. 226, under a statute of New York sub-
stantially like ours. The power to convert real estate into
money against the will of the owner, is an extraordinary and
dangerous power, and ought never to be exercised *unless the
necessity therefor is clearly established."*

It was said in *Idema v. Comstock* (1907), 131 Wis. 16,
18, 110 N. W. 786:

"True, as argued by counsel for appellant, the judicial rule
of long standing is that a sale should not be made for the

purposes of partition unless that is necessary in order to protect the parties from serious loss."

We are of the opinion that the record in this case is barren of any proof from which it could be found that the parties or either of them will suffer "great prejudice" by reason of physical partition.

The testimony of the defense is that partition in kind is feasible, as against that of the plaintiffs' witnesses to the effect that a large farm would be a better investment. This is not the proper test. As said in *Vesper v. Farnsworth, supra* (p. 362), the question to be determined is "whether, if the premises be partitioned, the value of the share of each owner will be materially less than his or her probable share of the purchase money in case the premises are sold."

Plaintiffs' witnesses expressed doubt that the farm divided would bring as much as if sold in one parcel. Such a doubt is not evidence, and if it were, it is not sufficient to establish that the owners will sustain pecuniary loss by partition in kind which will warrant an order of sale. The finding of the trial court is therefore contrary to the great weight of the evidence.

We are mindful that the defendant's proposal of a plan of partition is not proper and that partition in accordance with statutory procedure should be ordered by the trial court. See *Hayden v. Newman* (1938), 229 Wis. 316, 282 N. W. 66.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with this opinion.