Richard L. **EATON**

v.

Louise Eaton **HACKETT.**

Supreme Judicial Court of Maine.

March 3, 1976.

Perkins, Thompson, Hinckley, Thaxter & Keddy, by Charles P. Barnes II, Portland, for plaintiff.

Preti & Flaherty, by Arthur A. Peabody, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

This is an appeal from a judgment in the Superior Court in York County accepting and confirming the report of Commissioners which partitioned a parcel of real estate on Drakes Island in the town of Wells. We deny the appeal.

The plaintiff and defendant, brother and sister, each own an undivided one half interest in this real estate. Count I of plaintiff's complaint sought appointment of Commissioners and partition of the property pursuant to 14 M.R.S.A. §§ 6501–6525.[1] The defendant joined in the prayer.

A Justice in the Superior Court ordered the partition and appointed three Commissioners with instructions to set off to each his share or, if an even division cannot be made "without great inconvenience", fixing a money award to the one who has less than his share and to recommend to the Court sale and division of the proceeds if division cannot be made without prejudice or spoiling the whole.

The Commissioners qualified, prepared a survey plan of the property, viewed and inspected the property with the parties, and filed their report partitioning the property as they apportioned between the owners, "quality and quantity relatively considered". The plaintiff moved the acceptance of the Commissioners' Report. The defendant moved its rejection, asserting then that

(1) It sets no value on the whole estate or on the portions set off.

(2) The Report does not show the Commissioners' basis for division or that they considered the money value in the market or its productive value or that of its respective parts.

(3) Disparity of quality and quantity appears from the descriptions of the respective parcels and that as a result of the application of wrong principles, the partition was grossly unequal.

After hearing in the Superior Court, at which testimony was given by two real estate appraisers presented by the defendant and by the three Commissioners, the presiding Justice entered a judgment confirming the report. This appeal followed.

Now, on appeal, the defendant again attacks the sufficiency of the Report, the absence of findings as to *value* which she contends must be distinguished from both "quantity" and "quality", and the sufficiency of the evidence presented at hearing to justify the Justice's confirmation of the Report.

The evidence disclosed that the property concerned was residential-recreational type property consisting of a very old farmhouse with a newer two-story ell addition, a very old barn, a storage building which had been converted into a small apartment (referred to as "the garage house") and a cottage, all located on a lot containing 2.15 acres. It is immediately apparent that

1. In a separate count, the plaintiff also sought an accounting by the defendant of proceeds from the rental of the property since their mother's death in 1970. No action was taken on this Count II but the presiding Justice certified under M.R.C.P., Rule 54(b) that there was no just reason for delay in entering a final judgment as to Count I, thus making his decision on Count I ripe for appeal.

a division into two identical units cannot be made.

Our earliest statutes made provision for the partition of real estate. P.L.1821, ch. 37. The basic guiding principle was stated simply:

"The comparative value of each share is the criterion, by which equality of partition is to be ascertained." *Field v. Hanscomb,* 15 Me. 365, 367 (1839).

The *Field* Court made it clear that it entertained no illusion that equal acreage would always result in equal value by adding:

"Probably in a majority of cases, this could not be effected by a division, having reference to quantity only." 15 Me. at 367.

With these basic principles in mind the *Field* Court approved the partition in which the Commissioners had made up the deficiency in quality of one party's share by giving him additional acreage.

The problem of partitioning units of land of varying qualities, resulting in reports of divisions which are not patently equal, no doubt led the Court in *Dyer v. Lowell,* 30 Me. 217, 219 (1849) to hold that the warrant must demand and the report must order either the setting off by mathematical division acreage "of average quality or value" or "a just and equal division as to value". The *Dyer* Court was concerned with a report which had set off, without further explanation, 2730 acres of timberland from a township. We take it that the Court was acknowledging that the practicalities of making a division of equal shares without reducing the utility of the land may prevent setting off equal acres of average quality and necessitate a division of unequal acreage.

The present case, obviously, is one in which the respective qualities of varied units of real estate must be evaluated in order to make a division of substantial equality. The defendant urges us that it must appear that the division was made on the basis of *value.* With this we agree.

The effective statute authorizes the Court to direct the Commissioners to set off "to each his *share*". (Emphasis added.) In the few cases in which our Court has examined the actions of the Commissioners the Court has spoken of the comparative *values* of the shares. Certainly, in both *Field* and *Dyer* the Court made clear that quantity alone is not the equivalent of value. The Court recognized *quality* as a factor and, in essence, set up an equation in which quantity + quality = value.

However, we do not find in our decisions any indication that the standard of value means fair market value *exclusively.* We must bear in mind that the purpose of partition is to leave each of two claimants (in such a case) equally favored by the decision. It seems indisputable that a particular portion of a parcel of land might have a greater desirability to one party than to the other, for either financial, utilitarian or sentimental advantages. Or both parties may indicate a preference for a particular portion of the property. Only one can have it. The one so favored must expect some corresponding advantage to the other party if a substantial equality of division is to obtain.

In other words, in a particular case an attempt to place a precise monetary value on the property may not be helpful or essential to an equal division. Value, we think, means the full range of the benefit the parties may be expected to derive from their ownership of their respective shares.

Returning to our own case, we note that the warrant which issued to the Commissioners clearly directed them to divide the property in accordance with the two parties' equal interests. The Commissioners' report states that they divided the property into two lots, setting off Lot 1 to the plaintiff and Lot 2 to the defendant. While, as the defendant complains, the Report

fails to recite the Commissioners' conclusion that they have divided the property equally,[2] the Commissioners reported that they "partitioned said real estate and *apportioned* the same *between* the owners, quality and quantity relatively considered." (Emphasis added.)

After hearing on the defendant's motion to reject the report on the precise ground, in part, that the report does not state that the Commissioners gave each party one half in value, the Justice accepted and confirmed the Commissioners' report finding that the division was substantially equal. The Justice doubtless interpreted the Commissioners' language reporting a partition by *apportionment* between two individuals as meaning the equal apportionment which the warrant had directed them to make. Furthermore, when the *Dyer* Court said:

> "It [the equality of the division] ought to have appeared, by the oath of the Commissioners, that they had so divided it" (30 Me. at 219),

the Court was considering, on *certiorari*, the bare report of the Commissioners which had been accepted below without objection. While this Court later, in *Morse v. Morse*, 150 Me. 174, 178, 107 A.2d 496, 498 (1954) spoke, in dicta, of "the report not showing equal division as to value" as being an irregularity which would invalidate the report, we are sure the Court was referring only to the *Dyer* situation where the reviewing Court had before it only the apportionment with a complete absence of explanation.

The Justice here could not only give the language of this Report a reasonable interpretation but he also heard the testimony of the Commissioners themselves in the hearing on the defendant's motion to reject the report.

■ The standard by which a Justice, on motion to accept or to reject, evaluates the Commissioners' report was discussed in *Morse v. Morse, supra.* The Court recognized there that, in view of the absence of statutory authority for a formal, recorded hearing before the Commissioners,[3] (14 M.R.S.A. §§ 6501–6525) and because the Commissioners' own appraisal of value must rest in part upon their view of the premises, the "sufficiency of the evidence" rule is an inappropriate standard for testing the equality of the Commissioners' partition. The Legislature, we said there, has placed the responsibility for equality of division in the Commissioners and not in the Court. The corrective powers of the Court lie in its authority to set aside and recommit when either the face of the Report or evidence presented at a hearing on a motion to reject demonstrates bias, prejudice or gross error of the Commissioners, clearly and unmistakably shown.[4]

■ The reported colloquy between the Justice and counsel shows that he fully understood that this was the standard for his review.

The three Commissioners were a real estate appraiser with 28 years experience, a retired savings bank executive with long experience in local real estate appraisal in

---

2. More careful draftsmanship would have included this conclusion.

3. However, the requirement of notice indicates a clear legislative intention that the parties should be entitled to be present personally with counsel or be represented by counsel and participate with the Commissioners—as these parties did—in the examination of the property and make known their points of view there or at another convenient place.

4. The *Morse* Court noted, with approval, language of similar import found in American

Jurisprudence, now repeated at 59 Am.Jur.2d, Partition, § 116:

"'The well-settled rule is that the action of commissioners in partition will not be set aside on the ground of unequal allotments except in extreme cases as where the partition appears to have been made upon wrong principles, or where it is shown by very clear and decided preponderance of evidence that the partition is grossly unequal." 150 Me. at 177, 107 A.2d at 498.

connection with mortgage applications, and a lawyer. The Justice could find from their testimony that:

The partition divided the property into Lot 1 which was set off to the plaintiff and Lot 2 which was set off to the defendant. Lot 1 contains 49,024 square feet and Lot 2 54,564 square feet. The farmhouse, barn and "garage house" were contained in Lot 1 and the cottage was in Lot 2. On the west both parcels had frontage on a tidal river and Lot 2 overlooked a marsh on the north. The farmhouse and barn have similarities in design which makes it somewhat advantageous to keep them as a unit. The same advantage existed as to the farmhouse and "garage house" which had a common septic tank. The cottage on Lot 2 had its own septic tank. The cottage on Lot 2 stands alone, so to speak, being more than twice as far from any of the three structures on Lot 1 as they are from each other.

The defendant, through her attorney, had made known her desire that the entire property should not be sold and the proceeds divided (*Burpee v. Burpee*, 118 Me. 1, 105 A. 289 (1919)). She wanted to retain part of it because of her family's historical relation to it. The Commissioners believed an equal division could be made. Both parties wanted his share to include the cottage and surrounding area which became part of Lot 2. While Lot 1 contains three buildings, the farmhouse is nearly 200 years old and in a very advanced state of deterioration, the barn is in a similar condition and the "garage house" is of little value. One Commissioner felt that the presence of the farmhouse reduced the value of Lot 1. On the other hand, the cottage on Lot 2 is the most valuable of the buildings and sought by both parties. The advantage of getting this building offset the fact that Lot 1 had three buildings. Furthermore, Lot 2 contained 6600 more square feet of area and the proximity to the marsh land adds an aesthetic quality favored by people in that area. Lot 2 would also be physically capable of subdivision under existing local and State lot size requirements without disturbance of the existing structure. The advantage to the defendant of receiving the parcel that both parties wanted was considerable. Finally, the Commissioners said they had given consideration to "dollar values" of the respective parcels, although this was not the exclusive factor, and that they considered that they had made an equal division.

The Justice also heard testimony from the two experienced real estate appraisers who had arrived at opinions as to the fair market value of the two lots and who considered Lot 1 to be of considerably greater value than Lot 2. One of them valued Lot 1 at $60,920.50 and Lot 2 at $31,856.50. The other placed a fair market value of $65,000 on Lot 1 and $40,000 on Lot 2.

Neither appraiser, of course, had necessity to be concerned with the defendant's expressed wishes that the property be divided to avoid a sale or with the problems of accommodating the defendant's advantage in obtaining the structure and area which she preferred and intended to keep in the family with the plaintiff's disadvantage in receiving the area which was his second choice and which the Commissioners expected him to attempt to dispose of as a saleable unit.

There was no claim that the Commissioners' decision was the result of bias or prejudice. The defendant had the burden of demonstrating clearly and unmistakably that there was an inequality in the division so substantial as to constitute gross error. The Justice below was not satisfied that such inequality had been proved.

Neither are we satisfied that his finding that the division was substantially equal was clearly erroneous, and we find no application of incorrect principles of law.

The entry will be:

Appeal denied.

All Justices concurring.