1997 SD 1

**Chester J. ELI and James M. Eli, Plaintiffs and Appellees,**

v.

**Jody L. ELI, Defendant and Appellant,**

and

**Hauge Associates; A.Y. McDonald Supply Co.; Credit Collection Service, Inc.; McFarland Supply Co.; Fensel'S Supply Co.; Viborg Coop Oil Co.; and Yankton N.O. Nelson Co., Defendants.**

No. 19463.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1996.

Decided Jan. 8, 1997.

---

William J. Klimisch, Goetz, Hirsch and Klimisch, Yankton, for plaintiffs and appellees.

Alice L. Rokahr, Doyle and Kennedy, Yankton, for defendant and appellant.

GILBERTSON, Justice

[¶ 1] Jody Eli appeals the trial court's judgment ordering the sale at public auction of property in which she owned an undivided one-third interest. We reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURE

[¶ 2] The property at issue in this case consists of 112.5 acres in Turner County, South Dakota. This property was formerly owned by Myrtle J. Eli and has been owned by members of Myrtle's family for almost one hundred years. In May 1992, Myrtle deeded 117 acres, which included the subject property, to her three sons: Chester, James and Dale. The deed gave each of the sons a one-third undivided interest. In July 1993, Dale transferred his one-third undivided interest to his daughter, Jody Eli, by quit claim deed.

[¶ 3] This property consists of agricultural land and sits in a backward "L" shape. It is divided into two parcels for tax purposes. In 1995, the eastern strip, containing 74.92 acres, was assessed at $40,565 or $541.44 per acre. The western parcel, containing 37.35 acres, was assessed that same year at $20,790 or $556.63 per acre. A small portion of the original 117 acres is excepted out of the southeastern quarter of the property, leaving the 112.5 acres at issue. This small portion belongs to Dale Eli, by virtue of his receiving the land separately from Myrtle prior to her death, and is not in dispute here. Dale currently resides on this small outlot.

[¶ 4] There are no material improvements on the property. It has no wells and rural water is not available to it at the present time. All parts of the property contain comparable soil type and crop production with an estimated 27 acres of tillable ground on each of three approximately 40-acre parcels. Each tract has approximately 5–10 acres of pasture with a creek running through them. The land has been tested and classified by the Soil Conservation Service as prime farmland, with a lesser quality, rough terrain surrounding the creek bed that runs through all three parcels. The two approximately 40-acre parcels which lie in the bottom portion of the "L" to the south enjoy separate highway access, while the only access to the northern 40 acres, the upper portion of the "L," is through one of the southern two parcels. Currently, access to the northern parcel is through the 40 acres lying directly to the south.

[¶ 5] Until February 1996, the 112.5 acres were farmed as one unit under a cash rent lease. Chester and James Eli's witness, a certified land appraiser and auctioneer, testified that the cash lease value per acre would not change if the land were divided into three separate units rather than kept whole. This witness, with extensive experience in valuing land in the area, opined the value of the subject property would be $50 to $100 less if sold in smaller units rather than as one 112.5-acre unit. He testified the entire 112.5 acres was not large enough to sustain an independent farm operation, and posited the most likely buyers would be neighboring farmers looking to increase the size of their existing operations. The property's distance from any town made it unlikely someone would purchase it as a country residence.

[¶ 6] Following presentation of all the evidence, the trial court determined the ownership interests of the parties and ordered the property sold at public auction. The court

further ordered a referee be appointed to oversee the sale. Jody, who had requested the trial court partition the property and order the sale of all but her one-third undivided interest, appeals the judgment raising the following issue:

Whether the Elis established by a preponderance of the evidence that great prejudice would result if the subject property were partitioned rather than sold as a whole unit?

## ANALYSIS AND DECISION

[¶ 7] Partition of real property actions are governed by SDCL Ch. 21–45. SDCL 21–45–1 provides cotenants the right to bring a partition action and to have the property, or any part thereof, sold:

When several cotenants hold and are in possession of real property as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance or for life or lives or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein *and for a sale of such property or a part thereof, if it appear that a partition cannot be made without great prejudice to the owners.* (emphasis added).

SDCL 21–45–28 provides the statutory test the court must apply in determining whether partition or a sale is appropriate:

*If it appear to the satisfaction of the court* that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof, for which purpose it may appoint one or more, but not exceeding three referees, in its discretion. (emphasis added).

[¶ 8] "The right of a cotenant to partition and sale of real property held and possessed by that cotenant is a statutory right ... subject to the equitable jurisdiction of the court because partition is a proceeding in equity and the court has the inherent jurisdiction to adjust all the equities in respect to the property." *Braaten v. Braaten,* 278 N.W.2d 448, 450 (S.D.1979) (citations omitted). Equitable actions are reviewed under an abuse of discretion standard. *Jensen v. Weyrens,* 474 N.W.2d 261, 263 (S.D.1991); *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D. 1985).

[¶ 9] In *Johnson v. Hendrickson,* 71 S.D. 392, 396, 24 N.W.2d 914, 916 (1946), we interpreted the predecessor statute to SDCL 21–45–28 to mean that a trial court may order a sale of the property if the court is satisfied that, were the property partitioned, the value of each cotenant's share "would be materially less than his share of the money equivalent that could probably be obtained for the whole." (citing *Kluthe v. Hammerquist,* 45 S.D. 476, 188 N.W. 749 (1922)). "A sale is justified if it appears to the satisfaction of the court that the value of the land when divided into parcels is substantially less than its value when owned by one person." *Id.; Nelson v. Hendricks,* 74 S.D. 441, 54 N.W.2d 324, 324 (1952). *Accord Swogger v. Taylor,* 243 Minn. 458, 68 N.W.2d 376 (1955); *Trowbridge v. Donner,* 152 Neb. 206, 40 N.W.2d 655 (1950); *Berg v. Kremers,* 181 N.W.2d 730 (N.D.1970); *White v. Tillotson,* 256 Wis. 574, 42 N.W.2d 283 (1950).

[¶ 10] When applying the above definition, it is also necessary to heed the following policy considerations. Where it can be had without great prejudice to the owners, the law favors a partition in kind rather than a sale and a division of the proceeds among the owners. *Berg,* 181 N.W.2d at 735 (applying a statute similar to SDCL 21–45–28 and quoting *Swogger,* 243 Minn. 458, 68 N.W.2d 376). "Unless great prejudice is shown, a presumption prevails that partition in kind should be made. Forced sales are strongly disfavored." *Schnell v. Schnell,* 346 N.W.2d 713, 716 (N.D.1984) (citing *Berg,* 181 N.W.2d at 735 and *Richmond v. Dofflemyer,* 105 Cal.App.3d 745, 164 Cal.Rptr. 727, 733 (1980)).

[¶ 11] The burden of proof to establish great prejudice such that partition is not feasible rests with the party seeking the sale. *Nelson,* 74 S.D. at 442, 54 N.W.2d at 324; *Kluthe,* 45 S.D. at 479, 188 N.W. at 750. The court must decide in a partition action whether the premises can be physically partitioned,

or whether the parties seeking partition have met their burden of proof that the premises should be sold at a partition sale and the proceeds divided among the tenants in common. *Murphy v. Connolly*, 81 S.D. 644, 653, 140 N.W.2d 394, 399 (1966).

[¶ 12] The trial court found the subject property would sell for $50–$100 more per acre if sold as a whole 112.5–acre unit rather than as separate parcels. This finding is not clearly erroneous. It was based, in part, on testimony regarding the cost of digging wells that would be required to get water to the property so the individual parcels could be used as pastureland. It was also based on the distance the property lies from any town and the relatively small size of the entire unit. Testimony indicated a potential purchaser of this property might be a neighboring farmer who would wish to add to his own acreage, rather than someone attempting to sustain a farm operation on the 112.5 acres alone or a person looking to reside in the country. Testimony was offered that, considering the greater capabilities of modern farming machinery, smaller tracts of land are not as popular as they once were and the number of potential buyers would be decreased if the property were divided. It was estimated this property, sold as an entire unit, would sell for $400–$500 per acre. Based on these estimates, testimony was offered that the property would be worth 10–20% more if sold as a whole than if divided into smaller units. The land appraiser who testified to these figures characterized this as a "significant" difference.

[¶ 13] Following trial, the court ordered the entire property to be sold at public auction and appointed a referee to oversee the sale. In making this determination, the trial court considered the lesser value of the land if it were partitioned rather than sold as a whole. The trial court further considered the character and location of the land and, noting inaccessibility to the northeast parcel, indicated the property would be impractical to partition. The court also reflected on the size of the land and the respective usefulness of the parcels if the property were sold as a single unit. The court stated this was farmland which, based on the testimony and the farming practices in the area, would be less useful if the property were partitioned in kind than if sold as one 112.5–acre unit. As there were no improvements of any consequence to the subject property, this was not a factor in the court's decision.

[¶ 14] In *Johnson*, 71 S.D. at 396, 24 N.W.2d at 916, we reviewed a trial court's decision in a partition action in which the court ordered the sale of 160 acres of farmland in Clark County. In affirming the trial court's order to sell the property as an entire unit rather than divide it into "four or more separate tracts," we held that in this case, such division would result in material depreciation in the value of the property, both in terms of salability and as to the property's use for agricultural purposes. *Id.* (citations omitted). *See also Berg*, 181 N.W.2d at 735 (affirming a trial court's decision to partition approximately 520 acres into two separate parcels where each parcel would sustain an average farm operation in that area of North Dakota and where there was a high demand in the area for farmland of the partitioned property's size).

[¶ 15] However, monetary considerations, while admittedly significant, do not rise to the level of excluding all other appropriate considerations.[1] SDCL 21–45–1 and 21–45–28 speak of "great prejudice", not "great financial prejudice". The sale of property "without [the owner's] consent is an extreme exercise of power warranted only in clear cases." *Delfino v. Vealencis*, 181 Conn. 533, 436 A.2d 27, 30 (1980) (quoting *Ford v.*

---

1. One such appropriate consideration is ownership of agricultural lands by family members. The Legislature has recognized the value of the family-owned farm in South Dakota and has enacted statutes to protect its family ownership status. *See* SDCL Ch. 47–9A, Corporate Farming Restrictions, and SDCL Ch. 43–2A, Alien Ownership Act. Further, this Court has sought to protect ownership of agricultural land by families in property divisions arising out of divorce cases. *See Bennett v. Bennett*, 516 N.W.2d 672, 677 (S.D.1994); *O'Connell v. O'Connell*, 340 N.W.2d 700, 702 (S.D.1983); *Krage v. Krage*, 329 N.W.2d 878, 880 (S.D.1983); *Kittelson v. Kittelson*, 272 N.W.2d 86, 90 (S.D.1978); *Hanson v. Hanson*, 252 N.W.2d 907, 909 (S.D.1977); *Miller v. Miller*, 83 S.D. 227, 233 157 N.W.2d 537, 541 (1968).

*Kirk,* 41 Conn. 9, 12 (Conn 1874)). We believe this to be especially so when the land in question has descended from generation to generation. While it is true that the Eli brothers' expert testified that if partitioned, the separate parcels would sell for $50 to $100 less per acre, this fact alone is not dispositive. One's land possesses more than mere economic utility; it "means the full range of the benefit the parties may be expected to derive from their ownership of their respective shares." *Eaton v. Hackett,* 352 A.2d 748, 750 (Me.1976). Such value must be weighed for its effect upon all parties involved, not just those advocating a sale. *Butte Creek Island Ranch v. Crim,* 136 Cal. App.3d 360, 186 Cal.Rptr. 252, 255 (1982); *Brown v. Boger,* 263 N.C. 248, 139 S.E.2d 577, 583 (1965) (noting sale instead of partition "should not be done except in cases of imperious necessity .... it is no objection to a partition in kind that some of the cotenants prefer a sale to a partition"). To this extent, the previous monetary definition of "great prejudice" as found in *Johnson, supra,* is modified to include consideration of the totality of the circumstances.[2]

[¶ 16] The case of *Schnell,* 346 N.W.2d 713, is particularly instructive. The North Dakota Supreme Court remanded a forced sale of a family ranch and required a partition in kind, which could have been accomplished without great prejudice to the owners. *Id.* at 721. It held:

> Given the duration of [one party's] involvement with the ranch and her sentimental attachment to the land, her resistance to a partition and sale is logical. In this respect we note that the sale of real property against the wishes of a joint owner can be likened to a forced sale. Forced sales seldom produce the highest return on property. In *Vesper v. Farnsworth,* 40 Wis. 357, 362 (1876), the court said that the power to convert real estate into money against the will of an owner 'is an extraordinary and dangerous power, and ought never to be exercised unless the necessity

therefor is clearly established.' Similarly, in *Haggerty v. Nobles,* 244 Or. 428, 419 P.2d 9, 12 (1966), the court observed that although a court must occasionally order a sale in an appropriate case, 'it is obnoxious to compel a person to sell his property.' *Id.* Therefore, the court held, "[i]f only two persons are owners of property and each treasures its heritage, partition in kind will generally preserve those personal interests better than a partition and sale." *Id.* In so holding, the court took several factors into account in determining value, including the financial abilities of the parties to repurchase the land through the sale, the location and size of the property, the use of the property before and after the sale, and the sentimental value attached to the parcel, although the court noted that sentimental reasons are subordinate to the parties' pecuniary interests. *Id.* at 716. Applying a definition of "great prejudice" identical to this Court's interpretation of that term in *Johnson,* the North Dakota Supreme Court noted that the primary question, contrary to the trial court's formulation, is not solely "which alternative would provide optimal economic value or maximum functional use." *Id.*

[¶ 17] We agree with the North Dakota Supreme Court's treatment of the issue, and its application of stringent standards to those advocating sale and attempting to prove "great prejudice" from partition in kind. The Elis' piece of land is easily separable into three physically equal parcels, with similar soil content and physical layout. It can still be used for farmland as it was before the partition. There may be some interested in buying the three parcels as a whole; however, there was no mention that there would be a dearth of buyers interested in buying them separately. In fact, Jody Eli's father testified that he had had a neighbor express interest in one of the parcels. The Eli brothers' expert even admitted that the parcels could be bought and farmed separately.[3] *Cf. Nelson,* 74 S.D. 441, 54 N.W.2d 324 (wherein this Court affirmed the trial

---

2. In fairness to the *Johnson* Court, the sole issue before it on appeal was a monetary one.

3. We note the Eli brothers could reduce their anticipated loss in value due to a sale of three separate parcels by combining their interests and selling their 80 acres as one unit. This larger plot of land, by their own argument, may also entice more potential buyers than would their two individual smaller parcels.

court's order of sale of a ranch as a whole unit with one set of buildings which could not be divided and in which testimony indicated division, if possible, would not be practical).

[¶ 18] It is apparent from our review of the record that Jody's primary concern in resisting a sale of the entire property is keeping a portion of land that has been in her family for almost a century and that she plans to continue to use as rented farmland. She has not been intractable over what parcel she desires or whether she wants exclusive use of it. She even consented to an easement over the parcel she eventually retains in favor of the other subservient parcels. Jody has a right, equal to that of her uncles, to pursue her personal interests regarding her own property. The law favors partition in kind because it does not compel a person to sell property against a person's will and it does not disturb the existing form of inheritance. *Phillips v. Phillips,* 170 Neb. 733, 104 N.W.2d 52, 56 (1960). Moreover, under the concept known as owelty, and in order to retain ownership of her property, Jody has offered to pay compensatory adjustments to the Eli brothers to make up the $50 to $100 difference in price per acre, if in fact the difference exists after the sale and should the court find that equity requires her to do so. *See* SDCL 21–45–19 (under principles of equity, trial court may order compensatory payments between parties to make equal their respective rights).

[¶ 19] We find the trial court in this case placed too little emphasis on all of the other factors save the monetary difference. While it is true that the land may bring a lower price when sold in separate parcels, it is not so low that it could not be rectified by reasonable compensatory adjustments, nor so low that it alone carries the day when balanced against the competing interests of land ownership and inheritance and Jody's amenable attitude to equitable adjustments. The parties seeking the sale have the burden of proof to establish great prejudice and overturn the presumption favoring partition in kind. Weighing all of these factors, we believe a $50 to $100 per acre diminution in selling price is not enough to "greatly prejudice" the Eli brothers and they have failed to sustain their burden under SDCL 21–45–1.

[¶ 20] We reverse and remand for further proceedings consistent with this opinion.

[¶ 21] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.