#26950-a-DG
**2014 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRADLEY GARTNER,                                  Plaintiff and Appellee,

    v.

MERLE TEMPLE,                                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
JACKSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA J. DEVANEY
Judge

* * * *

HAVEN L. STUCK
Lynn, Jackson, Shultz
  & Lebrun, PC
Rapid City, South Dakota                          Attorneys for plaintiff and
                                                 appellee.


JAMES P. HURLEY
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                          Attorneys for defendant and
                                                 appellant.


* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 6, 2014
OPINION FILED **10/29/14**

#26950

GILBERTSON, Chief Justice

[¶1.] Appellant, Merle Temple ("Temple"), appeals the Sixth Judicial Circuit Court's judgment ordering the partition in kind of 3,374.9 acres of land located in Jackson County, South Dakota, owned with Appellee, Bradley Gartner, as tenants in common. Temple argues that the property cannot be partitioned without causing great prejudice, that the circuit court undervalued permanent structures on the land, and that the court should have reduced the amount of the ordered compensatory payment in favor of allocating additional land to Temple. We affirm.

**Facts and Procedural History**

[¶2.] In 2007, Gartner and Doug Temple—Merle Temple's father—entered into a joint venture and purchased a ranch (the Ranch) for $788,000 from Barry and Rita Barber—Gartner's aunt and uncle. The Ranch consists of 3,374.9 acres located in Jackson County, South Dakota. Gartner held an undivided one-fourth interest in the Ranch, and Doug Temple held an undivided three-fourths interest. The Ranch includes pastures, hay land, and several permanent structures including a house, machine shop, livestock sheds, calving barn, and corrals. After the purchase of the Ranch, Gartner and his wife sold their previous residence and moved into the house on the Ranch. Although Doug Temple and Gartner each kept the same number of cows on the Ranch, Gartner and his wife served as the Ranch's caretakers. Gartner received half of Doug Temple's calves in exchange for his services.

[¶3.] The White River divides the Ranch. Approximately 60% of the land is located to the north of the river and the remaining 40% is located to the south. The Ranch's headquarters—including the house in which Gartner and his wife reside—

is located on the southern parcel.  Both parcels are accessible by county roads, and the northern parcel is bordered on the north by a county road located approximately ten miles from Interstate 90.  Electricity and water resources are available on both parcels, but the northern parcel offers no winter protections for cattle, restricting its use to fair-weather grazing.

[¶4.]        Doug Temple died in May 2009, at which time Temple inherited his three-fourths undivided interest in the Ranch.  At that time, the Ranch was appraised at a value of $1,130,000.  Thereafter, relations between Temple and Gartner deteriorated.  In February 2012, Gartner brought an action for partition and subsequently asked the circuit court to appoint three referees.  The court held an evidentiary hearing on June 19, 2012, and heard testimony from Temple, Gartner, and three expert witnesses—Lyndell Peterson and Bryce Nelson for Temple, and Ronald Ensz for Gartner.  The court granted Gartner's motion and appointed Peterson, Nelson, and Ensz to prepare a Referee's Report (the Report).

[¶5.]        The referees met with the parties and their attorneys, inspected the property, viewed aerial photographs, examined the 2009 appraisal, and prepared the Report on June 25, 2013.  The Report recommended dividing the Ranch into two parcels along the White River, with Temple receiving the northern parcel and Gartner receiving the southern parcel, including his home and accompanying structures.  The Report resulted in an allocation of 920 acres to Gartner and 2,454.90 acres to Temple.  Because Gartner only held a one-fourth interest in the Ranch, but received almost 40% of the land, the circuit court ordered Gartner to make a compensatory payment to Temple of $102,337.  Temple asked the circuit

court to increase the value of the permanent structures according to their replacement cost—rather than their market value—and to award more land to Temple instead of the large compensatory payment. The circuit court denied Temple's request and he now appeals.

[¶6.]     Temple raises three issues in this appeal:

1.     Whether the circuit court erred in refusing to order a partition by sale.

2.     Whether the circuit court erred in adopting the Referee's Report.

3.     Whether the circuit court erred in ordering Gartner to make a compensatory cash payment to Temple instead of awarding more land to Temple.

**Standard of Review**

[¶7.]     "[P]artition is a proceeding in equity and the court has the inherent jurisdiction to adjust all the equities in respect to the property." *Eli v. Eli*, 1997 S.D. 1, ¶ 8, 557 N.W.2d 405, 408 (quoting *Braaten v. Braaten*, 278 N.W.2d 448, 450 (S.D. 1979)) (internal quotation marks omitted). "We review equitable actions for abuse of discretion." *Englehart v. Larson*, 1997 S.D. 84, ¶ 12, 566 N.W.2d 152, 155. *See also Eli*, 1997 S.D. 1, ¶ 8, 557 N.W.2d at 408. An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910. We do not determine whether we would have made the same decision as the circuit court. *Novak v. Novak*, 2006 S.D. 34, ¶ 3, 713 N.W.2d 551, 552. Rather, "[o]ur function in reviewing matters which rest in the discretion of the trial court is to protect litigants from conclusions

which exceed the bounds of reason." *F.M. Slagle & Co. v. Bushnell*, 70 S.D. 250, 254-55, 16 N.W.2d 914, 916 (1944).

[¶8.]     "Pursuant to an abuse of discretion standard of review, factual determinations are subject to a clearly erroneous standard." *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203.  In applying this standard:

> The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed.  This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence.  Doubts about whether the evidence supports the court's finding of fact are to be resolved in favor of the successful party's version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.

*Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222 (quoting *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 15, 746 N.W.2d 437, 442-43) (internal quotation marks omitted).  We give no deference to the circuit court's conclusions of law, however, and review them under a de novo standard.  *Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d at 204.

## Analysis and Decision

[¶9.]     *1.     Whether the circuit court erred in refusing to order a partition by sale.*

[¶10.]     Temple principally asserts that partition in kind cannot be made without causing great prejudice because neither resulting property would be capable of functioning as an economic unit.  He further asserts that the referees incorrectly valued the permanent structures located on land allocated to Gartner, further prejudicing Temple.  Finally, Temple asserts that the circuit court's order to Gartner to make a compensatory payment to Temple in the amount of $102,337 is

evidence that the partition is "grossly unequal." Consequently, Temple concludes that the circuit court should have ordered a sale of the entire property, that the court should have modified the Report to award him a larger compensatory payment or additional land, and that the court should have converted the compensatory payment actually awarded into additional acreage taken from Gartner's allotment.

[¶11.]     The partition of real estate is authorized and governed by SDCL chapter 21-45. In particular, SDCL 21-45-1 defines a cotenant's statutory right to the partition or sale of jointly owned property.

> When several cotenants hold and are in possession of real property as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance or for life or lives or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appear that a partition cannot be made without great prejudice to the owners.

In an action for partition, a court normally "must order partition of the property in kind according to the respective rights of the parties[.]" SDCL 21-45-15. "Unless great prejudice is shown, a presumption prevails that partition in kind should be made. Forced sales are strongly disfavored." *Eli*, 1997 S.D. 1, ¶ 10, 557 N.W.2d at 408 (quoting *Schnell v. Schnell*, 346 N.W.2d 713, 716 (N.D. 1984)) (internal quotation marks omitted). Therefore, a party has access to the remedy of partition by sale only in limited circumstances—when "it appear[s] to the satisfaction of the court that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners[.]" SDCL 21-45-28. The proponent of a

forced sale has the burden of proving great prejudice. *Eli*, 1997 S.D. 1, ¶ 11, 557 N.W.2d at 408.

[¶12.]     Temple claims that the circuit court's order is "grossly unequal, clearly unfair, contrary to law, and causes great prejudice to Temple[.]" Temple testified that dividing the Ranch into two units would devalue both because the resulting northern parcel would not have any buildings or improvements and the southern parcel would not have enough land to function as an economic unit. However, great prejudice is not established merely because the resulting post-partition parcels are less productive than the pre-partition whole, or even because the resulting parcels function dissimilar to the whole.

> In determining if great prejudice would result from a partition, the question is not which alternative would provide optimal economic value or maximum functional use. The resultant parcels need not be the economic, functional or aesthetic equivalent of the original parcel. Rather, great prejudice exists when "the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained from the whole."

*Schnell*, 346 N.W.2d at 716 (quoting *Berg v. Kremers*, 181 N.W.2d 730, 733 (N.D. 1970)). Thus, the effect of partition in kind "must be weighed against the effect of a sale of the land as a unit and the effect of a sale of the land in parcels." *Id.* at 720.

[¶13.]     When properly weighing the effect of partition in this case, it is clear that Temple has failed to meet his burden of showing great prejudice. Both of Temple's experts—Nelson and Peterson—offered testimony that actually tends to establish the absence of prejudice. Peterson testified that there is a demand for smaller tracts that do not necessarily constitute economical units in themselves. Likewise, Nelson also admitted that smaller tracts frequently sell at auction. The

circuit court noted both of these statements in its findings of fact. Under the circumstances, we are not presented with any reason to conclude that the circuit court clearly erred in doing so. Additionally, the circuit court had access to the 2009 appraisal, which also indicated not only that other farmers and ranchers operating in the area were buying any available expansion land, but also that new families were moving into the area to establish country residences (as opposed to farming or ranching units). Consequently, even if Temple and his experts offered testimony tending to show that the resulting partitions of the Ranch could not independently function as economic units, they did not offer testimony showing that the amount Temple would receive from selling his partition—when added to the compensatory adjustment he would receive of $102,337—is materially less than would be his share of the proceeds of selling the entire property. In other words, Temple has not shown that he would suffer serious pecuniary injury as a result of partition, even if the resulting parcels are not "economic units."

[¶14.]		More importantly, however, we consider more than just the financial implications of partition. We examine the totality of the circumstances to determine whether a partition in kind would cause great prejudice to the owners. *Eli*, 1997 S.D. 1, ¶ 15, 557 N.W.2d at 410. Although we consider a material depreciation in value resulting from partition, *id.* ¶ 15, 557 N.W.2d at 409, the value of land includes "the full range of the benefit the parties may be expected to derive from their ownership of their respective shares[,]" *id.* (quoting *Eaton v. Hackett*, 352 A.2d 748, 750 (Me. 1976)) (internal quotation marks omitted). Regardless of any disparity between the parties' respective shares, each co-owner

has equal property rights including "the right of ownership, the right to preserve the heritage of [his or] her labors, and the right to pass the property to [his or] her heirs." *Schnell*, 346 N.W.2d at 721. Therefore, in addition to the monetary implications of partition, we also consider "ownership of agricultural lands by family members[,]" *Eli*, 1997 S.D. 1, ¶ 15 n.1, 557 N.W.2d at 409 n.1, "the financial abilities of the parties to repurchase the land through [a] sale, the location and size of the property, the use of the property before and after the sale, and the sentimental value attached to the parcel," *id.* ¶ 16, 557 N.W.2d at 410.

[¶15.]     Although the parties directly involved in this litigation are not closely related, they each have a family connection to the Ranch's previous owners. While the Barbers are Gartner's aunt and uncle, Rita Barber and Doug Temple were first cousins. According to Temple's testimony, the Ranch has existed as a family operation for several generations, and the circuit court found that the Barbers were "happy to see it stay within the family." Gartner and his wife sold their previous home and have resided in the house on the Ranch since Gartner and Doug Temple purchased it in 2007. Since that time, the Gartners have also been the "caretakers of the ranch and cattle operation[.]" "Given the duration of [Gartner's] involvement with the ranch and [his] sentimental attachment to the land, [his] resistance to a partition and sale is logical." *Cf. Schnell*, 346 N.W.2d at 721. As we have previously noted, South Dakota favors protecting "ownership of agricultural lands by family members." *Eli*, 1997 S.D. 1, ¶ 15 n.1, 557 N.W.2d at 409 n.1. Thus, this factor weighs against a forced sale and supports the circuit court's decision to partition the property in kind.

[¶16.]     Further, the size and use of the property also support the circuit court's decision.  The court noted that both parties owned other cattle operations and that all three experts agreed that "[t]he [R]anch at issue in this case may be too small to constitute a feasible economic unit to support a ranching operation in and of itself."  This testimony acknowledges the possibility—perhaps the likelihood—that partitioning the property will not change its nature as supplemental agricultural land.  If Temple cannot establish that the Ranch—in its entirety—is a feasible economic unit in the first place, then he cannot demonstrate great prejudice by arguing that the resulting parcels are not feasible economic units.  Regardless of the actual probability that the Ranch is capable of functioning as an economic unit, we cannot conclude that the circuit court's finding of fact on this matter, based on the testimony of three experts, is clearly erroneous.

[¶17.]     Based on the totality of the circumstances discussed above, we are not convinced that the circuit court abused its discretion in ordering a partition in kind.  Temple's experts established that there was a market for smaller tracts and that selling the land as smaller tracts could bring the same, a lower, or a higher price than selling the property as one unit.  Similarly, because all three experts also agreed that even the pre-partition Ranch may not be an economic unit, Temple has not proven that the use of the property will necessarily change after partition.  In fact, it is possible that the only change that will occur is that one noneconomic unit will become two noneconomic units.  Thus, considering the presumption against forced sales and the heightened protection afforded to family-owned agricultural

land, we cannot say that the circuit court abused its discretion in concluding that Temple failed to show that a partition would result in great prejudice.

[¶18.]     2.     *Whether the circuit court erred in adopting the Referee's Report.*

[¶19.]     Temple also claims the circuit court erred in adopting the referees' valuation of the permanent structures located on the property allocated to Gartner. Although the Report estimates the market value of those structures at $48,750, Ensz testified that the replacement cost of those structures would likely be $202,120. Consequently, Temple concludes, the partition is a "huge loss to Temple of $153,370"—the difference between the market value and the replacement cost of the structures. Citing this Court's decision in *Johnson v. Hendrickson*, where we said that "a sale may be ordered if it appear[s] to the satisfaction of the court that the value of the share of each cotenant, in case of partition, would be materially less than his share of the money equivalent that could probably be obtained for the whole[,]" 71 S.D. 392, 396, 24 N.W.2d 914, 916 (1946), Temple reasons that the partition and corresponding undervaluation of the permanent structures demonstrates great prejudice. We disagree.

[¶20.]     When a court determines that partition in kind is appropriate, it "must appoint three referees unless the parties file written consent for one, in which case one only shall be appointed[.]" SDCL 21-45-15. The appointed referees "must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party, with a particular description of each share." SDCL 21-45-20. In response to this report, "[t]he court may confirm, change, modify, *or* set aside the report, and if necessary, appoint new referees." SDCL 21-45-22 (emphasis added). Thus, a

referees' report constitutes only a "proposal for the court's consideration." *Englehart*, 1997 S.D. 84, ¶ 23, 566 N.W.2d at 157.

[¶21.]    In essence, Temple argues that because the court had the power to modify the Report, and because the Report—according to Temple—undervalued the permanent structures on the Ranch, "[t]he trial court . . . clearly made reversible error in adopting the Referee's Report without adjustment or change." However, Temple does not cite any authority to support his use of the replacement cost of the permanent structures awarded to Gartner, rather than their market value. Indeed, the use of such a value would make little sense and would be contrary to prior procedure. *See Englehart*, 1997 S.D. 84, ¶ 23, 566 N.W.2d at 157 (discussing a court's review of the referees' "methods used to arrive at the fair market value" of parcels). Even if Temple were able to muster such support, however, a party demanding the sale of property must demonstrate the "effect [of a partition in kind] upon all parties involved, not just those advocating a sale." *See Eli*, 1997 S.D. 1, ¶ 15, 557 N.W.2d at 410; *Hendrickson*, 71 S.D. at 396, 24 N.W.2d at 916; *Schnell*, 346 N.W.2d at 717 ("[T]he question in a partition action is whether or not partition can be accomplished without great prejudice to the owners; not to one of the owners, but to all of them."). Even if Temple's argument had merit, the undervaluation of permanent structures on the partitioned property affects only him. Thus, such an undervaluation could potentially affect only the amount of property distributed to him under the partition, not militate against a partition in kind.

[¶22.]    3.    *Whether the circuit court erred in ordering Gartner to make a compensatory cash payment to Temple instead of awarding more land to Temple.*

[¶23.] Finally, Temple argues that the circuit court should have awarded him more land in order to minimize the compensatory payment. Temple asserts that the compensatory payment constitutes a forced sale of approximately 200 additional acres of land. In support of his theory, Temple cites *Englehart* for the proposition that a compensatory payment should be kept to a minimum. However, in *Englehart*, we made no such conclusion; rather, we simply held that the circuit court did not abuse its discretion in approving a referees' recommendation that "equally divided the property with respect to the quality and quantity of the property with a minimum amount of owelty." 1997 S.D. 84, ¶ 23, 566 N.W.2d at 157. While minimizing a compensatory payment may be preferable when possible, "a trial court has broad discretion in fashioning an equitable remedy[.]" *Lien v. Lien*, 2004 S.D. 8, ¶ 27 n.3, 674 N.W.2d 816, 825 n.3. Temple has the burden of showing that the circuit court abused its discretion in adopting the partition recommendation of the referees—who, collectively, determined that the most reasonable division of the property at issue should follow the natural boundary of the White River. Temple has not met his burden, and we cannot say that the circuit court's decision lies outside the range of permissible choices.

### Conclusion

[¶24.] "[A]lthough a court must occasionally order a sale in an appropriate case, it is obnoxious to compel a person to sell his property." *Eli*, 1997 S.D. 1, ¶ 16, 557 N.W.2d at 410 (quoting *Schnell*, 346 N.W.2d at 721) (internal quotation marks omitted). This is not one of those occasional cases when an order to sell is appropriate. After reviewing the record, we are not convinced that the circuit court

clearly erred in its relevant factual findings.  Nor are we convinced that the court abused its discretion in ordering a partition of the Ranch according to the referees' recommendation outlined in the Report.  Consequently, we affirm.

[¶25.]        KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.